UNITED STATES of America, Appellee,

v.

Michael J. KINGSLEY, Defendant, Appellant.

No. 87–1996.

United States Court of Appeals, First Circuit.

Heard May 5, 1988.

Decided July 11, 1988.

Owen S. Walker, Federal Defender Office, for defendant, appellant.

C. Brian McDonald, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., was on brief for appellee.

Before BREYER and TORRUELLA, Circuit Judges, and FUSTE,* District Judge.

FUSTE, District Judge.

We determine in this case whether several liquidated assets of the appellant, Michael J. Kingsley ("Kingsley"), seized pursuant to a civil forfeiture claim, 21 U.S.C. sec. 881, and eventually turned over to the government under the criminal forfeiture provisions, 21 U.S.C. sec. 853, should have at any time been placed in an interest-bearing account, and if so, whether Kingsley is entitled to any interest that may have accrued.

Forfeiture proceedings, part of the modern congressional response to growing problems in the administration of criminal justice, must nonetheless be in harmony with the fifth amendment. The final result in this instance is based on a logical exposition of alternatives discussed by the court during oral argument. Inasmuch as this case is one of first impression, this decision will be an aid to the district courts and future litigants who must sail through these newly-discovered waters.

## FACTUAL BACKGROUND

In May 1985, before any criminal indictment was returned, the Drug Enforcement Administration ("DEA") began the process of seizing the home and other possessions and assets of the appellant. We concern ourselves at this time only with the seizure

* Of the District of Puerto Rico, sitting by designation.

of and subsequent proceedings regarding approximately $53,000 in cash in various bank accounts and approximately $70,000 worth of instruments including miscellaneous stocks, bonds, and certificates. On June 20, 1985, the government instituted a formal civil forfeiture action against the seized bank accounts, and on September 5 filed a similar claim against the instruments. Kingsley was later indicted for tax and drug offenses on November 26, 1985.[1]

A second, superseding, indictment was returned by a grand jury on July 28, 1986. Count 16, like Count 15 of the original indictment, charged Kingsley with engaging in a continuing criminal enterprise ("CCE") under 21 U.S.C. sec. 848. This subjected the assets already seized and held in the civil matter to criminal forfeiture under the CCE provisions. 21 U.S.C. sec. 853.[2]

The property remained seized under the civil provisions until December 18, 1986 when, pursuant to a motion for injunctive relief by the government, the district court ordered the assets placed in the custody of the U.S. Marshal under the criminal forfeiture provisions. Evidently, the government was considering dismissing the civil claim and wanted to ensure the assets remained under official protection pending resolution of the criminal action. The district court granted the government's motion and ordered the seized cash and any instruments converted to liquid form transferred to the custody of the U.S. Marshal. The Marshal would then "deposit said monies into an interest-bearing bank account at the highest yield"—the arrangement the government itself requested. This aspect of the December 18, 1986 written order confirmed what the district judge had verbally ordered on November 25, 1986.

Kingsley pled guilty to all counts, including the CCE charge, on January 9, 1987. As part of his plea agreement, he agreed to forfeit most of the assets seized by the government, including those that were liquidated. In a separate agreement, Kingsley and the government agreed that the liquid assets seized and listed in an attachment to the plea agreement (and later as an attachment to the district court's judgment) would be applied toward a federal tax assessment against him of more than $300,000.[3]

Kingsley then learned that the liquid assets had never been placed in an interest-bearing account and that only the principal amount seized would be applied to his substantial tax debt. In April 1987, Kingsley moved for an accounting and for the application of an acceptable interest rate to those assets, claiming that the government both failed to discharge its duty as trustee for the seized assets and additionally violated an express court order mandating that the funds earn interest. The government responded with two accounts of the assets of Kingsley, one filed in June and the other in July, 1987. On October 27, 1987, the district court entered an order, from which Kingsley now appeals, accepting the

---

1. It is, of course, perfectly proper to seize assets prior to the filing of a civil claim or a criminal indictment, *see* 21 U.S.C. sec. 881(b), 21 U.S.C. sec. 848(e), 18 U.S.C. sec. 1963(e). Moreover, this Circuit has already upheld the procedures utilized by the government over Kingsley's challenge. *Application of Kingsley*, 802 F.2d 571 (1st Cir.1986). *But see Kingsley*, 802 F.2d at 580–83 (Torruella, J., dissenting). We only note the order of the steps taken by the government to illustrate who exercised dominion over the property, at which point, and pursuant to what authority.

2. A brief exposition on the difference between civil and criminal forfeiture may be illuminating. Civil forfeiture is an *in rem* proceeding brought against property either used to facilitate a crime or acquired as proceeds from a criminal venture. Forfeiture occurs once the property itself is found "guilty," that is, found to fit the description of property in 21 U.S.C. sec. 881(a)(1)–(8). *In personam* criminal forfeiture, on the other hand, is intended to directly punish persons convicted of a criminal offense by forcing them to forfeit the proceeds obtained as a result of that offense. Criminal forfeiture, therefore, occurs after the conviction of the defendant, rather than the property. *See generally* 1984 U.S.Code Cong. & Admin.News 3182, 3264–65.

3. The relevant assets amounted at this point to a little more than $68,000—approximately $53,000 in cash from the liquidated bank accounts and a $15,000 bond that had matured on November 15, 1985.

government's explanations and refusing to award Kingsley interest.

## THE GOVERNMENT'S THEORY

The government's attempt to comply with the court order granting their own request to place the funds in an interest-bearing account reveals a series of bureaucratic brick walls and less than sensible policymaking. Immediately following the district court's November 26, 1986 oral order requiring the funds to earn interest, Assistant U.S. Attorney Henry Rigali sought compliance from the DEA, the agency he thought controlled the assets, and from the U.S. Marshal. He was then informed that the cash, at that time in the form of manager's checks, had been seized by the Internal Revenue Service in connection with Kingsley's outstanding tax debt. The IRS proved reluctant to relinquish control and in fact, the funds were released only after Rigali informed that agency, on December 22, 1986, that the money was under the court's protection from the time it was seized in connection with the civil forfeiture action. Although the U.S. Attorney's office finally received the funds in January, 1987, those checks were never deposited into the U.S. Marshal's official holding account until May 5, 1987—long after any agreements with Kingsley were concluded.

The government offers no satisfactory explanation for its failure to place the funds in an interest-bearing account, after a court order to that effect. In the first account of Kingsley's assets, the government asserted that Treasury Department policy directed the creation of a non-interest-bearing account for seized monies pending final disposition of a criminal forfeiture proceeding. That same policy authorized the Marshal to maintain a separate fund should interest later be due, for example, to a criminal defendant who obtained an acquittal.[4]

■ Because we ultimately decide this matter under our own theory of contract, we do not reach the issue of which department regulations were applicable and whether they should be upheld. However, we do note the irrationality of a policy either to store the bank manager's checks in some safety deposit box, as was done with Kingsley's money, or to establish a non-interest-bearing account. In the first instance, the various banks that issued the checks receive something akin to a windfall for no apparent reason, and in either instance the burden of any interest due at the conclusion of the proceedings must fall on the government, and by extension, the taxpayer.[5] This is patently uneconomical and, in fixing the markers that will guide others in the future, we hold that the government does not possess unbridled discretion to pursue so pointless a policy.

■ The evocation of the "relation back" doctrine as a bar to Kingsley's claim is not an acceptable defense. In its appellate brief, the government contends that because "[a]ll right, title and interest in [forfeited] property vests in the United States upon the commission of the act giving rise to the forfeiture ...", 21 U.S.C. sec. 853(c), Kingsley cannot now claim any right to interest that may have accrued during that period after the assets were seized. Since the title relates back to the United States from before seizure, it is claimed, the government has no responsibility toward the owner afterward.

■ We do not agree. Title to forfeited property does relate back to the United

---

4. The very document offered by the government to verify that policy—a February 1985 letter from the Budget Staff Director of the Justice Department Controller's Office to the Justice/Personnel Branch Chief of the Office of Management and Budget—evidences a completely different arrangement. The Director recommended the establishment of a "special interest earning account for holding seized cash" within the U.S. Treasury rather than, as was previously the case, with commercial banks. He also suggested that "the Department compute and pay interest from this account when the government loses a case and funds are directed to be returned with interest."

5. Interest may not only accrue for an acquitted defendant, but also for a third party who proves his or her entitlement to the property at a post-conviction hearing. *E.g.,* 21 U.S.C. sec. 853(n); 18 U.S.C. sec. 1963(n).

States from the time of the commission of the crime, but this case concerns the status of property seized but not yet forfeited. Title reverts *only after* forfeiture is effected, and in the criminal context that is *only after* a conviction and determination that the assets were the product of illicit activities.[6] This is apparent from the very first line of the criminal forfeiture provision at issue here, which reads in pertinent part: "Any person *convicted* of a violation of this subchapter ... *shall forfeit* to the United States ..." 21 U.S.C. sec. 853(a) (emphasis added).[7]

Furthermore, the policy behind the relation-back doctrine fails to support the government's contention. Part of the civil as well as the criminal statutes, the doctrine ensures that a defendant cannot sell his property prior to conviction and thereby shield it from eventual forfeiture. Specifically, the framers of the statute at issue here wanted to prevent sham or fraudulent transactions to third parties before conviction. *See e.g., U.S. v. Harvey*, 814 F.2d 905, 915 (4th Cir.1987), *citing* S.Rep. No. 98–225, 98th Cong., 1st Sess. 200–01, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3383–4; *see also U.S. v. Rogers*, 602 F.Supp. 1332, 1347 (D.Colo.1985). Consequently the statute allows sales only to *bona fide* purchasers with no knowledge that the property was subject to forfeiture. Thus, in addition to the specific language of the statutes, there is no indication that the framers of the forfeiture provisions intended the United States to assume full control over seized property before actual forfeiture is consummated.

Similarly, the provisions for pre-conviction seizure were enacted to keep defendants from transferring their assets before conviction, thus preventing the government from locating the property later. 1984 U.S. Code Cong. & Admin.News at 3378–79, 3385–88. The seizure provisions are much less stringent than those for actual forfeiture and do not enable the government to acquire title to property merely by possessing the probable cause to seize it. *See U.S. v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1216–17 (10th Cir.1986).

█ Moreover, it would be ludicrous for us to hold, for example, that the government could seize a car as criminal proceeds, then sell it and, if the defendant obtained an acquittal, hand him some amount of cash instead of the vehicle. Common sense, and fundamental notions of criminal justice and property rights dictate otherwise, and the fact that title would relate back to the government if the owner were convicted does not alter the scenario. We must, therefore, conclude that the seized property is in a kind of limbo—belonging totally to neither the defendant nor the government until the underlying criminal matter is finally concluded.

## KINGSLEY'S THEORY

█ The appellant offers an equally inadequate theory, contending that the government had a trustee's duty toward the liquidated assets, and is now responsible for any waste of those assets under its control, including the failure of the funds to earn interest. Whatever it may be, the arrangement effected by seizure of property pursuant to criminal forfeiture provisions is not a trust. The Restatement (Second) of Trusts, sec. 2, defines a trust as a "fiduciary relationship with respect to

---

6. There are similar safeguards in the civil provisions. In a civil forfeiture proceeding, property cannot be forfeited until a determination that it falls into one of the categories listed in 21 U.S.C. sec. 881(a). *E.g., United States v. U.S. Currency*, 626 F.2d 11, 15 (6th Cir.1980). This circuit's assessment of the probable cause requirements for seizure can be found in *United States v. Pappas*, 613 F.2d 324 (1st Cir.1979).

7. The statutorily-mandated procedures for the disposition of property, including use of the property to maintain assets already in the government's protection, all concern property already forfeited. *E.g.,* 21 U.S.C. secs. 853(g), (h), (i), (m), (n). Indeed, the forfeiture statutes distinguish between "property which may be subject to forfeiture" and that "which has been ordered forfeited." *E.g.,* 21 U.S.C. sec. 853(*l*). Finally, when the "Attorney General's Guideline on Seized and Forfeited Property," 42 Crim.L. Rep. 3013 (Jan. 6, 1988), refers to the government's ability to spend, maintain, or otherwise dispose of assets, it concerns only those items already forfeited.

property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." The government's possession of assets following pre-conviction seizure fails to meet the major requirements of that definition. First, as we have already discussed, the government, who would presumably be the trustee, does not yet possess a property right. (Indeed, the irony of Kingsley arguing in favor of the government's right to his property before the completion of forfeiture proceedings has not escaped us.) Second, there has been no express manifestation of an intention to create a trust. Finally, we can find no real fiduciary relationship since, if Kingsley had been convicted at trial or had negotiated a different plea agreement that did not concern the liquidated assets, he would have no standing before us now. The assets would have been formally forfeited, title would have "related back" to the government, and Kingsley would have no claim at all to the funds.

In sum, we find the absence of any express legislative pronouncement or other legal provision creating a trust. We consequently find no formal fiduciary relationship permitting Kingsley to have earned interest during the period his assets were seized pursuant to the civil forfeiture statute. Special circumstances exist, however, warranting our consideration of the appellant's claim for interest once the detour was made from the civil to the criminal provisions.

## A CONTRACTUAL INTERPRETATION

■ We find that Kingsley's claim to interest earned on the funds seized is the plea agreement signed by Kingsley, his attorney and Assistant U.S. Attorney Rigali noting that "the government will make arrangements to apply whatever of Kingsley's liquid assets are in its possession toward Kingsley's civil tax assessment." Also included in the agreement was a proposed attachment to the court's judgment with descriptions of the original property seized. It is true that neither the agreement nor the attachment makes mention of interest accrued, but we cannot ignore the circumstances under which Kingsley concluded his agreement. When the Marshal was instructed to retain the assets under the criminal, instead of the civil, provisions, at the *government's* request, the district court ordered the funds placed in an interest-bearing account—an order that was issued first verbally, then in explicit written form. At the point Kingsley negotiated the plea, it is reasonable to assume as the only conclusion that he believed and relied upon his funds earning interest. We cannot say that Kingsley would not have made a different deal, or even gone to trial, had he known the true amount to be applied to his tax assessment. Kingsley's reasonable reliance is sufficient to enforce the promise made in the plea agreement. He may now recover for the government's breach. Restatement (Second) of Contracts, sec. 90. *Cf., Blake v. Commissioner of Internal Revenue*, 697 F.2d 473, 477 (2nd Cir.1982), *citing inter alia Hamer v. Sidway*, 124 N.Y. 538, 27 N.E. 256 (1891).

## CONCLUSION

We therefore give Kingsley the benefit of the bargain he thought he made and award him the interest that would have accrued from the moment his reliance reasonably began, that is, from the district court's oral order to the Assistant U.S. Attorney to place the funds in an interest-bearing account. Such interest would have accrued for the assets liquidated at that point and would have continued to accumulate until Kingsley concluded his plea agreement. This solution maintains the certainty necessary to ensure fairness in all phases of criminal proceedings.

*Reversed and remanded for further proceedings consistent with this opinion.*