# United States Court of Appeals
## For the First Circuit

No. 00-2455

DUANE W. LARSON,

Plaintiff, Appellant,

v.

UNITED STATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Campbell, Senior Circuit Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Duane W. Larson on brief pro se.
Donald K. Stern, United States Attorney, Shelbey D. Wright and Jennifer Hay Zacks, Assistant U.S. Attorneys, on brief for appellee.

December 27, 2001

**Per Curiam**.  Appellant Duane W. Larson ("Larson") filed this action in the district court to recover interest on funds which the federal government had seized for purposes of civil forfeiture but which were ultimately returned to him.  The district court awarded to Larson the interest actually earned on his money while it was in the government's hands.  This, however, was a fairly minimal amount since for most of the time the government held it, the money was in a non-interest bearing account.

Larson argues on appeal that he should have received the "constructively-earned" interest on his money, i.e., that interest which would have accrued if the government had placed the money in an interest-bearing account.  For the first time on appeal, the government argues that it is immune from any award of interest at all. It contends not only that Larson is not entitled to "constructively-earned" interest, but that even the district court's award of the minimal interest actually earned should be set aside and judgment entered for the government.

The appeal presents a matter of first impression in this circuit, although subsequent legislation enacted

last year by Congress makes the legal issue here largely irrelevant in future proceedings.

## I.

In 1985, Larson was convicted on federal drug and tax evasion charges and ordered to serve a ten-year prison sentence. In 1990, the government began to suspect that Larson was engaged in money laundering from prison (with the assistance of his wife, who was not in prison). In June 1990, the U.S. Customs Service seized a total of $55,584.90 from two bank accounts owned by Larson and began civil forfeiture proceedings.

Larson disputed the seizure. Ultimately the government declined to prosecute Larson and in mid-1994 it agreed to return the money it had seized. Larson then sued to recover interest on the funds.[1] The district court agreed that Larson should recover the interest his money actually had earned while it was held by the government. While the government initially represented to the court that the money

---

[1]The procedural history of Larson's claim is complex, but largely irrelevant for purposes of the appeal. Larson first filed an administrative claim, which was denied. He then filed suit in the district court, which dismissed on the grounds that the claim was more properly one to be filed with the U.S. Court of Federal Claims. That court found it lacked jurisdiction because the district court had exclusive jurisdiction over matters involving forfeiture. Larson then filed a new suit in the district court.

had earned approximately $10,000 in interest, it later disclosed that for most the four years during which the money was in the government's possession, it had been held in a non-interest bearing account. The total interest actually earned was $891.09.

Larson argued that the government should be liable to him for the amount of interest that would have been earned had the money been deposited in an interest-bearing account during the entire time it was in the government's possession. The court rejected that contention, and it entered judgment for Larson in the amount of $891.09. He filed this timely appeal.

Larson now argues that the government should be liable to him for "constructive interest," i.e., the amount of interest the money would have earned had the government kept it in an interest-bearing account. Although it did not cross-appeal, the government in its brief argues for the first time that the district court was without jurisdiction to award any interest at all because the government enjoys sovereign immunity as to interest claims against it. The circuits are split on this issue, and this circuit has never addressed the matter directly.

**II.**

-4-

In *Library of Congress v. Shaw*, 478 U.S. 310 (1986), the Supreme Court made it clear that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Id.* at 314. Moreover, "the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution." *Id.* at 321. At the time the instant suit was commenced, federal law provided the following:

> Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

28 U.S.C. § 2465 (1999). The statute, as it then stood, made no provision for, or reference to, the recovery of pre-judgment interest. *Shaw*, 478 U.S. at 319; *United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610, 614 (10th Cir. 2000), *cert. denied*, 122 S. Ct. 130 (2001).

At least three circuits have held that where the government, claiming a right to civil forfeiture, has seized funds, but has ultimately returned the funds to their owner, sovereign immunity bars the recovery of any interest the money earned while in the possession of the government. The Second, Eighth and Tenth circuits have reasoned that such interest would constitute the award of pre-judgment interest, and since 28 U.S.C. § 2465 does not provide for the recovery of pre-judgment interest in this situation (and since no other statute expressly waives sovereign immunity), the government enjoys sovereign immunity from interest claims. See $30,006.25 in U.S. Currency, 236 F.3d at 614-15; United States v. $7,990.00 in U.S. Currency, 170 F.3d 843, 845-46 (8th Cir.), cert. dismissed, 528 U.S. 1041 (1999); Ikelionwu v. United States, 150 F.3d 233, 238-39 (2d Cir. 1998).

Two other circuits disagree. In United States v. $277,000 U.S. Currency, 69 F.3d 1491 (9th Cir. 1995), the Ninth Circuit held that the interest actually earned while seized funds were held by the government was not interest at all, but rather, the "profit from wrongly seized property." Id. at 1493. The court further reasoned that even where the money did not actually earn interest, the government should

-6-

be liable for the interest the money would have earned, had the government placed it in an interest-bearing account.

> Where a disputed *res* is capable of being put to use for someone, it makes no sense whatsoever that a pile of dollar bills should be left doing no good for anyone. Certainly in any normal commercial dispute over property, the disputed property would, as soon as practical, be placed in an escrow account to earn interest that would go to whoever was the ultimate winner.

Id. at 1494. Moreover, the court concluded that in a sense, money held by the government always "constructively" earns interest, since "all financial assets in the hands of the government are a means by which the government does not have to borrow equivalent funds." Id. at 1495.

The Sixth Circuit concurred with this view, in United States v. $515,060.42 in U.S. Currency, 152 F.3d 491 (6th Cir. 1998). Noting that the Ninth Circuit's decision in $277,000 in U.S. Currency had been authored by a Sixth Circuit judge sitting by designation, it adopted the reasoning set out by the Ninth Circuit and allowed for the recovery of "constructively-earned interest" on seized funds which were later returned. $515,060.42 in U.S. Currency, 152 F.3d at 504-06.

One other circuit has cited this approach with apparent approval, but ultimately it did not need to decide

-7-

which view to adopt in order to resolve the case before it. In United States v. 1461 West 42nd St., Hialeah, Fla., 251 F.3d 1329 (11th Cir. 2001), the Eleventh Circuit refused to award interest on returnable rents and profits. It cited $515,060.42 in U.S. Currency with approval, but said that no interest (either actual or constructive) had been earned because all rental income had been used by the government to pay management and operating expenses of the real estate while in the government's possession. It seems the same result could have been reached (i.e., a result in favor of the government) by finding that sovereign immunity barred the claim.

Only one First Circuit case has dealt with the issue of interest constructively earned on seized money, but that case is readily distinguishable. In United States v. Kingsley, 851 F.2d 16 (1st Cir. 1988), the government requested and received an order from the district court directing that seized cash be transferred to the custody of the U.S. Marshal and then be deposited into an interest-bearing account. A plea agreement Kingsley later signed provided that the government would apply the seized assets to his outstanding tax debt. Despite the court order, the government failed to deposit the money in an interest-

bearing account. This court held under a contract theory that in entering into the plea agreement, Kingsley reasonably had relied upon the court's order to place the funds in an interest-bearing account. Thus, when entering into the plea agreement, he reasonably assumed that interest on the funds would be available to reduce his tax debt. The government's breach entitled defendant to damages. Id. at 21. No mention was made of the rule in Shaw, not surprisingly because the court's award was not one for pre-judgment interest *per se*; rather, the award was in the form of damages directly caused by the breach of contract.

In its decision allowing an award of interest, the Ninth Circuit in $277,000 U.S. Currency relied in part on our decision in Kingsley. The Ninth Circuit noted that in both cases, the court had ordered the funds placed in an interest-bearing account (actually, in the Ninth Circuit case, the court order simply stated that the government "may deposit" the funds in an interest-bearing account), and it said that as in Kingsley, the claimant could "reasonably rely" on that order being carried out. The Ninth Circuit said the claimant in its case had reasonably relied by foregoing any efforts to obtain a release of the property on bond. $277,000 U.S. Currency, 69 F.3d at 1497.

But, the facts in <u>Kingsley</u> seem clearly distinguishable from those in the Ninth Circuit case. In <u>Kingsley</u>, the claimant entered into a contract (his plea agreement) in reliance on the court's order mandating deposit of the money in an interest-bearing account, and the government's breach of that contract resulted in an award of damages. In the latter case, the claimant did not enter into any contract in reliance on the order, so no claim for contract damages could accrue to him. Moreover, it seems far less certain that any reliance by the claimant in <u>$277,000 U.S. Currency</u> would have been reasonable, given the permissive language of the court's order.

The Ninth Circuit's view thus appears to stand or fall on its alternative rationale: that the award was not interest at all, but rather, the "profit from wrongly seized property," <u>$277,000 U.S. Currency</u>, 69 F.3d at 1493; that it did not make sense to allow the government to let the money just sit there; and that the same would not be allowed in any commercial dispute between private parties. The problem with this rationale, however, is that neither fairness considerations nor rules applicable to private disputes can alone provide grounds for abrogating sovereign immunity. As the Supreme Court made clear in <u>Shaw</u>, "[c]ourts lack the

-10-

power to award interest against the United States on the basis of what they think is or is not sound policy." Shaw, 478 U.S. at 321. The Court went on to caution in Shaw that "the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution." Id. at 321. In characterizing such claims not as "pre-judgment interest," but as "profit from wrongly seized property," the Ninth Circuit can be said simply to have devised "a new name for an old institution." $277,000 U.S. Currency, 69 F.3d at 1493.

Congress has since changed the forfeiture statute so as specifically to allow the recovery both of interest actually earned and interest that could have been earned. 28 U.S.C. § 2465 now provides for the recovery of "interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument," 28 U.S.C. § 2465(b)(1)(C)(i) (2000), and "an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid." 28 U.S.C. § 2465(b)(1)(C)(ii) (2000). But, the new rule is expressly limited "to any forfeiture

-11-

proceeding commenced on or after the date that is 120 days after April 25, 2000." See Notes to 28 U.S.C. § 2465. Congress did not, as it might have, make the revision retroactive. Hence, the new legislation is inapplicable to the issue of interest in cases, like the instant one, commenced prior to 120 days after April 25, 2000, the effective date of the new law. The House Report from an earlier version of the bill explained that the amendment was justified because "[u]nder current law, even if a property owner prevails in a forfeiture action, he will receive no interest for the time period in which he lost use of his property. [footnote citing Shaw] In cases where money or other negotiable instruments were seized, or money awarded a property owner, this is manifestly unfair." The House Report thus assumed that, prior to the new legislation, there could be no recovery of interest.[2] H.R. Rep. No. 105-358(l), at 34 (1997).

In keeping with Shaw and with the views of the Second, Eight and Tenth Circuits, supra, as well as with the view expressed in the above House Report, we feel

---

[2]The House Report took this view notwithstanding that, at the time if was written, only the Ninth Circuit had taken a position on the pre-judgment interest question, and, as above indicated, the Ninth Circuit had allowed interest.

constrained to hold that sovereign immunity prevents recovery of interest here. It seems unfortunate to reach this result after Congress has revised the statute to indicate its wish to waive sovereign immunity and allow interest; but Congress did not make the revision retroactive, and indeed, it indicated when enacting the revision that it was doing so to change preexisting law that was believed to bar interest awards in the very circumstances now presented.

Larson complains about the government's failure to raise its sovereign immunity argument in the district court. The government's failure to do so, in addition to its failure initially to compute accurately the interest actually earned, resulted in a misdirection of resources in the district court. Sovereign immunity, however, is a jurisdictional defense that may be raised for the first time in the court of appeals. Edelman v. Jordan, 415 U.S. 651, 677-78 (1974); Parker v. Universidad de Puerto Rico, 225 F.3d 1, 9 (1st Cir. 2000) (citing Edelman). An appellate court may, indeed, raise the issue sua sponte, so the fact that the government has not cross-appealed here is of no consequence. See Roe v. Cheyenne Mountain Conf. Resort, Inc., 124 F.3d 1221, 1227-28 (10th Cir. 1997) (jurisdictional

argument may be heard without a cross appeal, even where the argument would result in vacation of the judgment and the partial relief awarded to the appellant); Sherman v. Community Consol. Sch. Dist., 980 F.2d 437, 440 (7th Cir. 1992) (appellee's jurisdictional argument must be considered, even where no cross appeal filed); see also 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3904 (2d ed. Supp. 2001) ("A cross-appeal [] is not necessary to challenge the subject-matter jurisdiction of the district court, under the well-established rule that both district court and appellate courts are obliged to raise such questions on their own initiative."). "Nothing can justify adjudication of a suit in which . . . there is some [] obstacle to justiciability." Sherman, 980 F.2d at 440.

**The judgment is vacated, and the matter is remanded for entry of judgment in favor of the government.**