**In re MARK INDUSTRIES, Petitioner.**

**Appeal No. 84–1550.**

United States Court of Appeals, Federal Circuit.

Dec. 21, 1984.

Robert R. Thornton, Leff & Mason, Beverly Hills, Cal., for petitioner.

Charles E. Wills, Los Angeles, Cal., for respondent.

Before MARKEY, Chief Judge, and BENNETT and SMITH, Circuit Judges.

## ORDER

MARKEY, Chief Judge.

MARK INDUSTRIES, (MARK) petitions for a writ of mandamus ordering the United States District Court, Central District of California to vacate its "Order on Motion to Dismiss", (Order) insofar as it: (1) voided the presumption of validity attached to Reissue Patent No. 31,400 ('400 patent); and (2) set the date for accrual of damages as the issue date of the '400 patent. We grant the petition and require that the Order be *vacated.*[1]

---

1. The Order also reset a pretrial conference for August 13, 1984. That part of the Order, now moot, is not involved in this petition.

## Background

On October 23, 1980, MARK sued Calavar Corporation (Calavar), (Civil Action No. CV-80-4707 AWT), alleging infringement of U.S. Patent No. 4,226,300, issued October 7, 1980 and entitled SELF PRO-PELLED AND EXTENSIBLE BOOM (Original Patent).

On October 26, 1981, MARK filed reissue application Serial No. 315,222 (Reissue Application) in the Patent and Trademark Office (PTO). Notice of the filing of the Reissue Application was published in the Official Gazette on April 13, 1982. The Reissue Application issued as the '400 patent on October 4, 1983.

A pretrial conference had been repeatedly reset by a series of stipulated orders. In mid-September 1983, MARK'S counsel notified Calavar's of the imminent issuance of the Reissue Patent. The parties stipulated a request to continue the October 17 pretrial conference until after Calavar determined whether it would stipulate substitution of the '400 patent for the Original Patent in the suit. The district court signed the Stipulation and Order, reset the pretrial conference for April 16, 1984, set January 16, 1984 as the date by which to file a motion to amend the complaint by substituting the Reissue Patent, and set March 12, 1984 as the last date for all other pretrial motions.

Calavar did not stipulate to substitution of the '400 patent. On February 27, 1984, the district court granted MARK'S motion to file an amended complaint substituting the '400 patent and MARK filed the amended complaint on that date.

On March 19, 1984, Calavar moved to dismiss the amended complaint, asserting that MARK'S counsel was guilty of inequitable conduct. The charge was a failure to notify opposing counsel when the reissue application was filed, a notification Calavar said was a "custom" among patent lawyers. Calavar did not assert that MARK'S counsel knew of that "custom". Calavar claimed prejudice because, if it had received direct notice, it would have filed a protest in the PTO pursuant to 37 CFR § 1.291 (1981).

MARK denied the existence of any such "custom", denied knowledge thereof (if it existed), and cited 37 CFR 1.11(b) (publication in the Official Gazette constitutes notice for filing protests) and 1017 O.G. 10, dated April 13, 1982 (the public notice that the Reissue Application had been filed).

## District Court Order

On June 18, 1984, the district court declined the motion to dismiss and in the alternative issued the Order now before us, the pertinent provisions of which are:

1. No presumption concerning validity or invalidity of the '400 patent shall apply in this case. The burden of establishing validity of the '400 patent or any claim thereof shall rest on MARK. The jury instructions shall reflect the foregoing.

2. Damages recoverable by MARK and any accounting for damages shall be limited to the period commencing October 4, 1983, the issue date of the '400 patent.

The court based its Order on a finding that MARK'S counsel was guilty of inequitable conduct and willful misconduct in failing to follow the "custom" described by Calavar. The district court stated:

I find that the defendant has been misled and prejudiced by plaintiff's inequitable conduct; therefore, that an appropriate remedial order should issue. I find that it is the custom among patent lawyers to notify opposing counsel when a reissue application is made to the PTO, *after* litigation has commenced concerning either validity and/or infringement of a patent. Such is the case here and no notice was given. (emphasis in original).

Defendant was prejudiced because at the time this reissue application was filed PTO regulations permitted defendant's active participation in the reissue proceedings as a "protestor". Even after the interim regulations were adopted, which governed protests filed after December 8, 1981, although *inter partes* participation was precluded, defendant still had the right to file a protest listing

the relevant prior art and other information. Defendant was deprived of this opportunity through the willful misconduct of plaintiff's counsel.

### Issues

(1) Does this Court have jurisdiction to act on the present petition?

(2) Were the district court's findings which led to the conclusion that MARK'S counsel was guilty of "inequitable conduct" and "willful misconduct" clearly erroneous?

(3) Did the district court exceed its discretion in voiding the statutory presumption of validity and in substituting a burden on MARK of establishing validity for the statutory burden on Calavar of establishing invalidity?

(4) Did the district court exceed its discretion in limiting damages recoverable by MARK to a period commencing with the date on which the '400 patent issued?

### Analysis

#### (1) Jurisdiction

■ This Court has authority to act on the present petition under the All Writs Act, 28 U.S.C. § 1651(a) (1976). Issuance of the requested writ is "necessary or appropriate in aid of" our jurisdiction. *See Mississippi Chemical Corp. v. Swift Agricultural Chemicals*, 717 F.2d 1374, 219 USPQ 577 (Fed.Cir.1983). *See also Beacon Theatres v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

■ Use of the writ is not restricted to instances in which failure to issue it would preclude an appeal to the issuing court. The writ may be employed in exceptional circumstances to correct a "clear abuse of discretion or 'usurpation of judicial pow-

er'" by the trial court. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953) (quoting *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945)). *See In re Snap-on Tools Corp.*, 720 F.2d 654, 220 USPQ 8, *amended by* 735 F.2d 476 (Fed. Cir.1983); *Mississippi Chemical, supra; United States v. Boe*, 543 F.2d 151, 64 CCPA 11 (1976); *Duffy v. Tegtmeyer*, 489 F.2d 745, 749, 180 USPQ 317, 320 (CCPA 1974).

Because the jurisdiction of the district court was based on 28 U.S.C. § 1338, this court has exclusive jurisdiction of any appeal from the final decision in the case. 28 U.S.C. § 1295(a)(1). Thus this court, and only this court, has authority to issue a writ appropriately in aid of jurisdiction in this case. If the writ is available at all under the circumstances here, it is available only from this court.

■ This court has no administrative authority over any district court. *In Re Precision Screen Machines, Inc.*, 729 F.2d 1428 (Fed.Cir.1984). The present petition, however, is directed not to an administrative matter, but to application of the statutory patent law in the conduct of a suit for patent infringement. Because this court must apply the same patent law in considering any appeal in the case, issuance of a writ governing application of that law at trial is, as above indicated, "necessary and appropriate in aid of" our jurisdiction.

#### (2) The District Court's Finding

■ The sole fact found by the district court, and on which it based its order, was that MARK'S counsel violated the asserted "custom".[2] That finding, like all findings, is reversible only under the "clearly erroneous" standard. Fed.R.Civ.P. 52(a). A find-

---

**2.** A subsidiary finding was that Calavar was prejudiced by a lost opportunity to participate in the reissue proceeding. That opportunity was lost as well by the election of Calavar's counsel to disregard notices in the Official Gazette and to rely on an expectation of direct notice. More importantly, Calavar will have a full and fair opportunity to present in the course of a fair trial all of the material and arguments it could have presented in the PTO. The finding that there was prejudice here sufficient to "justify the district court's order" was clearly erroneous.

ing may be held clearly erroneous when, on the entire record, the appellate court is left with a "definite and firm conviction that a mistake has been committed". *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). That definite and firm conviction is compelled here.

Doubtless courtesy and candor are better served when opposing counsel is informed of the filing of a reissue application. It is quite another thing, however, to find inequitable conduct and willful misconduct of counsel on the basis of violation of a "custom", duty, or obligation, the existence of which is nowhere supported in the record.

MARK'S counsel, Robert R. Thornton (Thornton), told the district court in a Memorandum in Opposition to Motion to Dismiss that he knew of no "custom" of notifying opposing counsel of the filing of a reissue application, and that MARK'S requests for continuance of pretrial conferences were due to ongoing discovery occasioned by Calavar's newly-announced infringing device. Thornton signed the Memorandum, which, under Federal Rule of Civil Procedure 11, constituted "a certificate by him that he had read the ... paper, that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact ...".

Calavar cites no case making any reference whatever to the purported "custom" and cited none to the district court. The *only* basis for the court's assumption that such a "custom" exists appears in the argument of Calavar's counsel wherein counsel related he "had never heard" of a suit that was not stayed during reissue proceedings. Charles E. Wills, Calavar's counsel, filed a Declaration "under penalty of perjury". That Declaration contains no allegation or even suggestion that any such "custom" exists or that MARK'S counsel knew of any such "custom".

Indeed, the nearest the Wills Declaration comes to discussing notification consists in this description of Wills' reasons for not relying on the Official Gazette notice system:

> In the late '70s the Law Offices of Wills, Green & Mueth ceased its subscription to the Official Gazette because of the storage problem and the fact that there were services which promptly advised subscribers of changes in the Patent Laws and the Rules of Practice In Patent And Trademark Cases; and

> Even when his offices received copies of the Official Gazette, Declarant did not read the notices regarding the filing of applications for reissue or for reexamination because there was no way of knowing the identity of a patent which might be involved in *future* litigation, and as to *pending* litigation, he believed it was reasonable to rely on the integrity of opposing counsel to notify him upon the filing of such an application, whereby he could participate in the proceedings in behalf of his clients. [Emphasis in original.]

■ Calavar waited from September, 1983, when it received notice of the Reissue Application, until March 19, 1984 (a week after close of pre-trial motions) to file its motion to dismiss. It based that motion on undue delay in prosecution and on suspicion, stated as fact, that MARK had proceeded in "secret" to mislead the court with stipulated extensions of pre-trial conferences, to create "surprise" on the eve of trial, and to keep Calavar from filing a protest. Calavar accepts no responsibility for its internal decision to save storage space by cancelling its subscription to the Gazette and relying on the integrity of opposing counsel. At no point, moreover, did Calavar submit any *evidence* that a notification "custom" or practice warranted its unilateral decision to disregard the formal notice system provided by the Gazette. Nowhere does Calavar assert that MARK knew, or had any way of knowing how the Wills firm conducted its practice, or that the Wills firm, engaged in representing a client in litigation, felt no obligation to check the Gazette or to file a standing

interrogatory requiring notification of, *inter alia*, the filing of a reissue application.[3]

Willful misconduct in violating a "custom" requires knowledge of that "custom" and intent to violate it. Neither of those elements was even alleged, let alone proven. On the present record, the district court's findings that MARK'S counsel deliberately failed to follow a custom of notification were clearly erroneous and, thus, the legal conclusion that he was guilty of inequitable conduct and willful misconduct cannot stand.

### (3) *Presumption of Validity—Burden of Proof*

■ When a district court does correctly determine that counsel is guilty of misconduct, that court must have a wide discretion in designing an appropriate remedial sanction. As the Ninth Circuit said in *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1331 (9th Cir.1981):

> Our task in reviewing the propriety of a sanction imposed by a district court is limited to determining whether we have a "definite and firm conviction" that it was clearly outside the acceptable range. This is a determination which must be made based upon the facts of the particular case. *Ballew v. Southern Pac. Co.*, 428 F.2d 787, 789 (9th Cir.1970); *Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965).

■ In the present case, this court cannot escape the definite and firm conviction that the sanction designed *sua sponte* by the district court was "clearly outside the acceptable range".

In designing a sanction short of dismissal, payment of the opposing party's costs resulting from the misconduct comes readily to mind, but other sanctions may be appropriate. If there be one certain limit on the exercise of a court's discretion, however, and whatever may be the misconduct involved, that limit must be this—that the court shall not disregard the law, for no court has discretion to ignore the statutory law.[4]

■ A statute is by definition the law to be followed—not disregarded, effectively repealed, rewritten, or overruled (unless unconstitutional)—in the federal courts. This court has noted not only the truism that courts are not at liberty to repeal a statute but also the impropriety of judicial legislation diminishing a statute's effect. *Lindemann Maschinenfabrik v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1459, 221 USPQ 481, 486 (Fed.Cir.1984).

The presumption of validity is mandated by the first paragraph of 35 U.S.C. § 282:

> A patent *shall* be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependant form) *shall* be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The *burden of establishing invalidity* of a patent or any claim thereof *shall rest on the party asserting such invalidity.* [Emphasis added.]

In ordering that the statutorily mandated presumption of validity (there is no presumption of invalidity) should not apply to the '400 patent, that a burden on MARK to prove validity should be substituted for the statutorily mandated burden on Calavar to prove invalidity, and that jury instructions reflect the foregoing, the district court ef-

---

**3.** MARK submitted to this court declarations of Thornton and three other patent lawyers of equally long experience at the bar. Because those documents were not before the district court, their submission on this appeal was improper, they have not been considered by this court, and Calavar's motion to strike them is granted.

**4.** Calavar sought dismissal and did not request the sanction here imposed. Yet it argues strenuously before us for its acceptance. It is apparently willing to establish a precedent for ignoring the statute and risk being denied the benefit of it in a future case in which Calavar may be the plaintiff-patent holder. Calavar argues that if the district court could dismiss the complaint it could apply a lesser sanction. The argument is hypothetical and assumes that dismissal would be proper. We deal here with the sanctions set forth in the Order as issued.

fectively repealed for this case the statutory law enacted by the Congress as 35 U.S.C. § 282. That statute set a rule of law governing procedure in the civil action provided for in 35 U.S.C. § 281. An attempted exercise of discretion so expansive as to drive out the law cannot be sustained.

 Had the trial been conducted and the jury instructed as set forth in the district court's order, this court on appeal would have been required to order a new trial. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358–59, 220 USPQ 763, 769 (Fed.Cir.1984). The presumption mandated by § 282 is a procedural device governing the conduct of the trial in a patent infringement case in which validity is challenged. That a statutory presumption is procedural makes it no less the law. Nor does its procedural nature render it discardable by the court. Like all presumptions, that mandated by § 282 may be overcome by evidence, but, absent repeal of the statute, it cannot be ignored. *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1574–75, 221 USPQ 292, 293 (Fed.Cir.1984). The particular remedial sanction set forth in paragraph 1 of the order violated the statute, 35 U.S.C. § 282. It must therefore be held an abuse of discretion.

### (4) Damages

Paragraph 2 of the district court's order would deprive MARK, if victorious after trial, of all damages for infringement occurring between October 7, 1980 (when the original Patent issued) and October 4, 1983 (when the '400 patent issued). That provision of the order was contrary to law.

Three claims (11, 12 and 13) of the '400 patent and of the Original Patent are identical. If the patents are not held unenforceable and one or more of those claims is held valid and infringed, MARK would be entitled to damages for any infringement occurring after October 7, 1980. *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827–28, 221 USPQ 568, 575 (Fed.Cir.1984). MARK may even be entitled to damages for infringement occurring between October 7, 1980 and October 4, 1983, of other claims in the '400 patent, absent proof of intervening rights by Calavar, as described in 35 U.S.C. § 252, which reads as follows:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but *in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending* nor abate any cause of action then existing, and *the reissue patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.*

No reissue patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, *unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.* The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or use as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced be-

fore the grant of the reissue. [Emphasis added.][5]

The sanction set forth in paragraph 2 of the court's order is in contravention of the governing statutory law.

A further provision of the statute (35 U.S.C. § 284) should be noted. That provision reads in pertinent part:

Upon finding for the claimant the court *shall* award the claimant damages adequate to compensate for the infringement ...

The discussion set forth above in respect of paragraph 1 of the Order is equally applicable to the sanction imposed in paragraph 2. The latter must therefore be held equally an abuse of discretion.

Accordingly, it is ORDERED:

(1) That the petition is *granted*.

(2) That the district court shall vacate its June 18, 1984 Order.

---

**5.** Calavar cites the second sentence of the second paragraph as justification for the sanction, arguing as though that sentence were not limited to the absence of identical claims in the two patents.