**MAGNIVISION, INC., Plaintiff–Appellant,**

v.

**The BONNEAU COMPANY, Defendant–Appellee.**

No. 95–1093.

United States Court of Appeals, Federal Circuit.

June 9, 1997.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Aug. 8, 1997.

957

PAULINE NEWMAN, Circuit Judge.

Magnivision, Inc. is the owner of United States Patent No. 5,144,345 for a display system for eyeglasses. The patented system is particularly useful for the display of non-prescription, corrective eyeglasses, since the customer must often try many different pairs in order to find the pair that provides optimum visual correction. The United States District Court for the Central District of California entered judgment in favor of The Bonneau Company, on a jury verdict that the '345 patent was invalid and not infringed.[1] We conclude that the incorrect jury instruction on the presumption of validity, and the accompanying prejudicial violations of the Federal Rules of Evidence, deprived Magnivision of a fair trial under correct procedural and substantive law. We vacate the judgment and grant Magnivision's request for a new trial.

### THE ISSUE OF "PROSECUTION IRREGULARITIES"

Magnivision had moved *in limine* for summary judgment on Bonneau's defense of inequitable conduct, which defense was based primarily on asserted improper procedures by the patent examiner during prosecution of the '345 patent. The district court granted Magnivision's motion. Thus, the issue of inequitable conduct was resolved pre-trial. That judgment is not appealed.

Despite the grant of summary judgment, at the trial Bonneau raised the same issues of improper procedures, now calling them "prosecution irregularities." The magistrate judge, after some hesitation, overruled Magnivision's objection that the issue had already been decided. Throughout the trial, Bonneau pressed through witnesses and argument the issue of "prosecution irregularities," and told the court and the jury that the presumption of validity was lost. The judge instructed the jury accordingly:

> 28. ... The presumption of validity also means that it is presumed that there were no irregularities during the examination of the application that became the '345 patent.

Peter T. Cobrin, Cobrin Gittes & Samuel, New York City, argued for plaintiff-appellant.

John M. Cone, Strasburger & Price, L.L.P., Dallas, Texas, argued for defendant-appellee. Of counsel were Jerrold B. Reilly and Robert D. Fish, Lyon & Lyon, Los Angeles, California.

Before RICH, NEWMAN, and CLEVENGER, Circuit Judges.

1. *Magnivision, Inc. v. The Bonneau Co.*, No. CV– 92–7553 (C.D. Cal. June 21, 1994).

This instruction was an incorrect statement of law, for the presumption of validity and the placement of the burden of proof remain "static, never-changing." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359–60, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The purpose of the presumption of validity, codified at 35 U.S.C. § 282, is to contribute stability to the grant of patent rights. *See* P.J. Federico, *Commentary on the New Patent Act*, 75 JPTOS 161, 215 (1993) (reprinted from 35 U.S.C.A. (1954 ed.)) ("That a patent is presumed valid was the law prior to the new statute, but it was not expressed in the old statute. The statement of the presumption in the statute should give it greater dignity and effectiveness.") The presumption operates by placing the burden of proving invalidity on the person attacking the patent, who must prove invalidity by clear and convincing evidence. The presumption does not dissolve and the burden of proof does not change during the trial; rather, the evidence presented by the challenger must be of such quality and weight as to establish invalidity despite the presumption. *Solder Removal Co. v. U.S. Int'l Trade Comm'n*, 582 F.2d 628, 632, 199 USPQ 129 (CCPA 1978) ("To speak of the presumption as 'no longer attaching' is to risk a concomitant, and unspoken, assumption that the burden of persuasion is thereafter no longer upon him who asserts invalidity.")

■ We thus consider whether the incorrect jury instruction and the presentation of the asserted "prosecution irregularities" sufficiently tainted the fairness of the trial as to require remedy. Not all errors warrant annulment of the process. A trial need not be perfect; it must, however, be fair. Thus the Rules of Evidence require that the issues presented at trial be relevant to the matter in dispute, and be supported by admissible evidence that is free of unfair prejudice. *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (discussing issues of relevance and admissibility of scientific evidence and expert testimony). We give *de novo* review to the question of whether the issue of prosecution irregularities is of consequence, for the question of whether Bonneau has stated a legally relevant defense is a question of law, not a matter of trial management.

The principal "prosecution irregularity" asserted by Bonneau was the patent examiner's failure to record the substance of a telephone call that the examiner made to Magnivision's attorney. Although Magnivision's attorney recorded the substance of the telephone call, as the rules require, Bonneau centered its attack on the fact that the examiner did not do so and thus did not record his reasoning.

The patent examining process is conducted by way of a series of exchanges between patent examiner and patent applicant. To facilitate and speed the process, the Rules of the Patent and Trademark Office authorize personal and telephone interviews. The rules require that all interviews be recorded by the patent applicant, in accordance with 37 C.F.R. § 1.133:

> **(b)** ... In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.

The Manual of Patent Examining Procedure at § 713.04 elaborates, requiring the applicant to record the substance of the interview unless the examiner does so:

> ... It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates that he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability....

The telephone interview here was recorded by Magnivision's attorney in a letter filed with the Patent and Trademark Office on March 18, 1992, two days after the examiner's phone call:

> On March 16, 1992, the undersigned was advised by Examiner Bovernick that claims to the combination of an eyeglass display member and an eyeglass hanger member would be allowable if presented in

proper form and four such claims are included herewith.

On April 21, 1992 Magnivision's attorney again wrote, stating that "Applicant believes that new claim 55 contains the type of recitations discussed with the Examiner on March 16, 1992 and is therefore believed allowable," and describing how new claim 55 recites cantilever support including two parallel rods and the details of the cooperation between the hanger member and the parallel rods.

This telephone call was the cornerstone of Bonneau's charge of "prosecution irregularities," for the examiner apparently did not file a separate report of this telephone call. In his opening statement Bonneau's counsel told the jury:

And we are going to review that prosecution history in this case in some detail because it has an unusual history. You're going to see that certain irregularities— [sidebar conference at which the magistrate judge overruled Magnivision's objection to this issue]. . . .

Then, a rather curious thing happened. Mr. Cobrin, on March 16th, 1992, had a telephone interview with the Examiner. And after that, the Examiner, for the first time, agreed to allow the claims. And *despite the rules of the Patent Office requiring a written report of any interview, there is no such written report*, and there is nothing to indicate why the Examiner did an about-face.

(Emphasis added.) Bonneau's counsel did not mention Magnivision's written reports of the interview. This asserted "irregularity" was stressed and magnified by Bonneau throughout the trial. Indeed the court's instructions to the jury reinforced the position that there was a failure to comply with "the rules of the Patent Office," for the caption of Jury Instruction 31 again mistakes the rule that it is the applicant who must file the statement of interview, and implies that the rule was violated:

31. *EFFECT OF FAILURE TO FILE A WRITTEN STATEMENT OF INTERVIEW*

In his closing argument to the jury Bonneau's counsel quoted this caption, again described the examiner's telephone call as an "unrecorded discussion," and again stressed "the failure to file a written statement of interview":

Unfortunately, we don't know everything else that the Magnivision patent attorneys told the examiner because the file wrapper is incomplete. Moreover, it is incomplete at a point which is critical with respect to what was said that led to the allowance of Claim 5. . . . This concerns the March 16th interview. Clearly, *the key event in connection with the allowance of Claim 5 was the unrecorded discussion* between the examiner and Mr. Cobrin on March 16, 1992. . . .

If you review Judge King's instructions on the failure to file a written statement of interview, instruction number 39 [sic: 31], you will see the significance of this incompleteness.

(Emphasis added.) These remarks were contrary to the undisputed fact that Magnivision's attorney filed a written statement of the interview, and that there were several subsequent exchanges of record before the claim was allowed.

The record shows the pervasiveness with which Bonneau pressed the issue that the examiner had not complied with the rules, and that the validity of the patent was thereby affected. During cross-examination of Mr. Gottlieb, Magnivision's patent expert, Bonneau's counsel raised this issue several times. For example, at page 16 of the June 10 transcript, Bonneau's counsel asked:

Q. Isn't it important that there be a complete written record of what occurred during the prosecution of the patent application?

At page 39 he asked:

Q. Do we have any written summary prepared by the Examiner of the discussions that took place between Mr. Cobrin and the Examiner?

At page 43 he asked:

Q. I'm asking if that document sets forth the reasons why the Examiner changed his

mind about the claims being not patentable to the claims being patentable.

At page 46 he asked:

Q. And the language of claim 5, according to the remarks in this amendment when this claim was submitted, indicates that the language of this claim was discussed with the Examiner on March 16th, 1992, correct?

At page 49 he asked:

Q. Those are Mr. Cobrin's remarks. What I'm asking is where is it set forth in the prosecution history the Examiner's reasons why he found claim 5 allowable?

Counsel for Bonneau implied a serious failure by the examiner. Bonneau again raised this issue during examination of its witness Mr. Jessup, eliciting the "expert" opinion that the rules had not been complied with.

The principal other prosecution irregularity stressed by Bonneau was Magnivision's attorney's "remarkable persistence" in prosecuting the claims, described in Bonneau's closing statement to the jury as follows:

Furthermore, the interview [the March 16 phone call] and the eight or nine other interviews after the final rejection demonstrated the remarkable persistence of Mr. Cobrin in eventually wearing down the examiner and obtaining allowance of Claim 5. *It is in the context of this background that you need to evaluate the validity and infringement* of Claim 5.

(Emphasis added.) The prosecution history shows one personal interview, several telephone calls from the examiner, and one from the applicant after allowance. Multiple interviews are not illegal, and persistence in patent prosecution is not grist for patent invalidity.

■ These issues (and other asserted "irregularities" of lesser emphasis, concerning arguments about a reference and statements in a Rule 132 declaration filed in connection with a patent not in suit) were considered and decided by summary judgment, pre-trial. The court having held pre-trial that there was not inequitable conduct, "prosecution irregularities" by the examiner or the applicant are not relevant to patent validity. The potential for prejudice flowing from unwar-

ranted charges of improper conduct led this court to establish objective rigor in *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 9 USPQ2d 1384 (Fed.Cir. 1988) (*en banc*), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), wherein the court held that there must be material misrepresentation or omission by the applicant, with the intent to deceive or mislead the examiner, in order to establish improper conduct in patent prosecution. *Id.* at 872, 9 USPQ2d at 1389.

The *Kingsdown* ruling was in response to the "plague" of litigation-inspired attacks that fed on the unfamiliarity of decisionmakers with the complex procedures of patent examination. Imperfection in patent examination, whether by the examiner or the applicant, does not create a new defense called "prosecution irregularities" and does not displace the experience-based criteria of *Kingsdown. See Northern Telecom v. Datapoint*, 908 F.2d 931, 939, 15 USPQ2d 1321, 1327 (Fed.Cir.1990) ("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required.") We emphasize that the issues that were presented at trial had already been raised and decided in the pre-trial proceedings, decided by summary judgment, concerning the charge of inequitable conduct.

■ The validity of a patent is always subject to plenary challenge on its merits. A court may invalidate a patent on any substantive ground, whether or not that ground was considered by the patent examiner. Procedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued. Indeed, the patent examiner's thought processes are shielded from discovery as to their "bases, reasons, mental processes, analyses or conclusions." *Western Electric Co. v. Piezo Technology, Inc.*, 860 F.2d 428, 432, 8 USPQ2d 1853, 1856 (Fed. Cir.1988). Thus it was simply incorrect to

instruct the jury that the presumption of validity could be lost by the "prosecution irregularities" here presented.

Reinforced by the incorrect jury instruction, the emphasis on the purported prosecution irregularities imparted disproportionate and prejudicial weight to the issue. Although the trial court has substantial discretion in determining the evidence to be admitted, the ultimate fact must be "of consequence to the determination of the action," in the words of Federal Rule of Evidence 401. As provided in Rules 401–403, admissible evidence must be relevant in that it must tend to make a consequential fact more or less probable. Since the issue of improper conduct in patent prosecution had been resolved pre-trial, there was no consequential fact to be proved by evidence of "prosecution irregularities," and the proffered evidence thereof was irrelevant. As Rule 402 states, irrelevant evidence is not admissible.

The purposes of the Federal Rules of Evidence include assuring that irrelevant evidence does not unfairly prejudice the trial. *Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988) (the Federal Rules of Evidence protect against unfair prejudice); *United States v. Abel,* 469 U.S. 45, 54, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984) (court has the duty to assess the probative value and relevance of prejudicial evidence). The issue of "prosecution irregularities" was simply irrelevant, and the emphasis on this issue at the trial advanced it to unfair prejudice. Rule 403 in the Notes defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." The obligation of the trial judge to act as "gatekeeper" is founded on the potential for prejudice. *Daubert,* 509 U.S. at 589, 113 S.Ct. at 2794–95.

Bonneau's presentation of this issue at trial, in over fifty pages of transcript and during six days of the nine-day trial, illustrates the tactic discussed in 22 Wright & Graham, *Federal Practice and Procedure: Evidence,* § 5217 (1978), that if evidence of marginal probative worth necessitates lengthy rebuttal, it imparts disproportionate

weight to the issue. The assertions and innuendos of impropriety were magnified by repetition. *See Louisiana Ass'n of Independent Producers and Royalty Owners v. Federal Energy Regulatory Comm'n,* 958 F.2d 1101, 1119 (D.C.Cir.1992) (a party "cannot, by sheer multiplication of innuendo, overcome the strong presumption of agency regularity") (quoting *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)). And the jury instruction, with its implicit endorsement of the issue, added weight to its prejudicial impact. *See Jamesbury Corp. v. Litton Industrial Products, Inc.,* 756 F.2d 1556, 1559 n. 4, 225 USPQ 253, 256 n. 4 (Fed.Cir.1985) ("reference in the instructions to a patent owner misleading the examiner was prejudicial").

We take note of the absence of substance to the charge of prosecution irregularities, as well as its prejudicial irrelevance to the determination of validity *vel non* of the patent in suit. We conclude that "the danger of unfair prejudice, confusion of the issues, or misleading the jury," Rule 403, removed the evidence on the issue of prosecution irregularities from a reasonable scope of the trial court's discretion. The admission of evidence and argument on that issue was contrary to the Federal Rules of Evidence. Viewing the proceedings as a whole, we are persuaded that fundamental fairness of the adjudication was prejudiced.

The instruction on the presumption of validity left that issue to be determined on a possibly incorrect standard. *See In re Mark Industries,* 751 F.2d 1219, 1224–25, 224 USPQ 521, 524–25 (Fed.Cir.1984) (directing district court to vacate its order that voided the presumption of validity); *American Hoist,* 725 F.2d at 1356–60, 220 USPQ at 768–70 (ordering new trial based, *inter alia,* on incorrect instruction on presumption of validity). *Cf. also Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1503 (11th Cir.1990) ("We think the district court's use of the wrong legal standard [the burden of proof] sufficiently taints and infects its finding ... to remand the case for a determination under the proper standard."); *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 752 (3d Cir.1994) (reversing and remanding because

district court failed to apply correct standard of clear and convincing evidence); *Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 340 (5th Cir.1984) ("Since the trial court applied an erroneous standard ... and erroneous burdens of proof, the defendants were not called upon to meet the correct test at trial. They must be given a chance to do so."); *see generally Pullman–Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982) (when trial court's findings were based on an incorrect legal standard, the appropriate remedy is to remand so that findings can be made in accordance with the applicable legal standard.)

On this appeal Bonneau says very little about these aspects. Instead, Bonneau argues that the judgment in its favor should be sustained if there were any basis for the judgment, on any of the issues presented at trial, applying the "extraordinarily deferential" review owed to a jury verdict. Such an appellate process would validate prejudicial tactics and ratify cynical advocacy, would confirm incorrect law and diminish the Rules of Evidence, and abdicate judicial responsibility for assuring a fair trial. We are cognizant of the burdens a retrial imposes on courts and parties. However, toleration of erroneous law and prejudicial advocacy imposes larger burdens. We do not accept a theory of litigation whereby improper process will be tolerated if the wrongdoer might have prevailed had the trial been fair.

The judgment is vacated, and the case remanded for a new trial.

### Costs

Costs to Magnivision.

*VACATED AND REMANDED.*