# United States Court of Appeals for the Federal Circuit

2008-1016

ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED
and ARISTOCRAT TECHNOLOGIES, INC.,

Plaintiffs-Appellants,

v.

INTERNATIONAL GAME TECHNOLOGY and IGT,

Defendants-Appellees.

Raphael V. Lupo, McDermott Will & Emery LLP, of Washington, DC, argued for plaintiffs-appellants.  On the brief were Brian E. Ferguson, Natalia V. Blinkova, and Leonard D. Conapinski, of Chicago, Illinois; and Terrence P. McMahon, Anthony De Alcuaz, and Robert J. Blanch, Jr., of Palo Alto, California.

Jeffrey W. Sarles, Mayer Brown LLP, of Chicago, Illinois, for defendants-appellees. With him on the brief were Brent A. Batzer, and Sarah E. Rauh.  Of ounsel on the brief were Jeffrey S. Love and Garth A. Winn, Klarquist Sparkman, LLP, of Portland, Oregon.  Of counsel was Andrea C. Hutchinson, Mayer Brown LLP, of Chicago, Illinois.

Mary L. Kelly, Associate Solicitor, United States Patent and Trademark Office of Arlington, Virginia, for amicus curiae Director of the Patent and Trademark Office.  With her on the brief were James A. Toupin, General Counsel, Stephen Walsh, Acting Solicitor, and Joseph H. Piccolo, Associate Solicitor.  Also on the brief was Anthony J. Steinmeyer, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Seth M. Galanter, Morrison & Foerster LLP, of Washington, DC, for amicus curiae Neurotechnology Industry Organization.  With him on the brief was Priya B. Viswanath.

Appealed from:  United States District Court for the Northern District of California

Judge Martin J. Jenkins

# United States Court of Appeals for the Federal Circuit

2008-1016

ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED and ARISTOCRAT TECHNOLOGIES, INC.,

Plaintiffs-Appellants,

v.

INTERNATIONAL GAME TECHNOLOGY and IGT,

Defendants-Appellees,

Appeal from the United States District Court for the Northern District of California in case no. 06-CV-3717, Judge Martin Jenkins.

_____

DECIDED: September 22, 2008
_____

Before NEWMAN, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

The district court concluded that the U.S. Patent and Trademark Office "improperly revived" U.S. Patent No. 7,056,215 after it was abandoned during prosecution, and therefore held it (and the continuation patent that followed it) invalid on summary judgment. We conclude that "improper revival" is not a cognizable defense in an action involving the validity or infringement of a patent. Thus, we reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Aristocrat Technologies Australia Pty, Ltd. and Aristocrat Technologies, Inc. (collectively, "Aristocrat") compete with International Game Technology and IGT (collectively, "IGT") in the market for electronic gaming machines. Aristocrat is the assignee of U.S. Patent Nos. 7,056,215 ("the '215 patent") and 7,108,603 ("the '603 patent"), both of which relate to a "slot machine game and system with improved jackpot feature." Prosecution of these patents began in Australia, when, starting on July 8, 1997, Aristocrat filed two provisional patent applications directed to the inventions embodied in the patents-in-suit. One year later, Aristocrat filed a Patent Cooperation Treaty application ("the PCT application") in Australia, claiming priority to the previously filed provisional applications. The PCT application was subsequently published. Pursuant to 35 U.S.C. § 371 and 37 C.F.R. § 1.495, Aristocrat was required to pay the fee for the U.S. national stage of the PCT application by January 10, 2000—thirty months after the filing date of the first Australian provisional application.

The U.S. Patent and Trademark Office ("PTO") did not receive Aristocrat's national filing fee until January 11, 2000—one day late. The PTO consequently mailed a notice of abandonment to Aristocrat, which stated, among other things, that Aristocrat "may wish to consider filing a petition to the Commissioner under 37 CFR 1.137(a) or (b) requesting that the application be revived." J.A. at 642. In lieu of filing a petition to revive the abandoned application, Aristocrat responded by filing a Petition to Correct the Date-In—that is, to correct the date on which the PTO received its national filing fee. The PTO denied the petition without prejudice, after Aristocrat failed to provide sufficient evidence to corroborate the date the filing fee was mailed. It is unclear when Aristocrat

received the PTO's denial,[1] but it later filed a petition to revive the '215 patent application under 37 C.F.R. § 1.137(b), claiming that the delay in paying the national stage filing fee was "unintentional." Id. at 660-61. The PTO granted the petition to revive on September 3, 2002, after concluding that "[a]ll of the requirements of 37 CFR 1.137(b) ha[d] been met." Id. at 687. Following the PTO's revival, Aristocrat resumed prosecution of the '215 patent application, and later filed the '603 patent application as a continuation of the '215 patent application. The '215 patent issued on June 6, 2006, and the '603 patent issued on September 19, 2006.

In June 2006, Aristocrat filed suit against IGT for infringement of the '215 patent in the United States District Court for the Northern District of California. Aristocrat amended its complaint to assert infringement of the '603 patent when that patent issued. IGT answered and subsequently moved for summary judgment of invalidity. It argued that the '215 patent was invalid because, after it was abandoned, Aristocrat was required to show that its delay was "unavoidable" in order to revive the application, not merely that its delay was "unintentional." Thus, according to IGT, the PTO "improperly revived" the '215 patent application by requiring Aristocrat only to show "unintentional delay." IGT also argued that the '603 patent was invalid, contending that since the '215 patent application was not lawfully revived, it constituted prior art to, and thus anticipated, the '603 patent under 35 U.S.C. § 102(b).

The district court granted IGT's motion. It first concluded that the Patent Act permitted revival of an abandoned patent application only upon a showing of

---

[1] The parties dispute when Aristocrat received notice of the denial. Because this dispute is unimportant to our analysis, we do not discuss it further here.

"unavoidable delay." Aristocrat Techs. Austl. Pty, Ltd. v. Int'l Game Tech., 491 F. Supp. 2d 916, 924-29 (N.D. Cal. 2008). Next, the district court found that IGT was permitted, pursuant to 35 U.S.C. § 282, to raise the PTO's alleged improper revival as a defense to infringement. Id. at 929-31. The district court also concluded, alternatively, that it possessed authority to review the PTO's revival of the '215 patent application under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"). Id. at 931-32. After concluding that Aristocrat abandoned the '215 patent application and failed to meet the more exacting "unavoidable delay" standard when attempting to revive it, the district court deemed the '215 patent invalid. Id. at 932-35. Finally, the district court also deemed the '603 patent invalid, under the rationale that if the '215 patent application was not properly revived, then it constituted invalidating prior art under 35 U.S.C. § 102(b). Id. at 935-36. Following its grant of summary judgment, the district court entered final judgment in favor of IGT. Aristocrat Techs. Austl. Pty, Ltd. v. Int'l Game Tech., No. 06-CV-3717 (N.D. Cal. Sept. 4, 2007).

Aristocrat timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

Statutory interpretation is a question of law, which we review de novo. Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1564 (Fed. Cir. 1995). We also review a grant of summary judgment de novo, reapplying the standard that the district court employed. Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1301 (Fed. Cir. 1999). Drawing all reasonable inferences in favor of the nonmovant, "[s]ummary

judgment is appropriate only when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

## B. Analysis

### 1. The '215 Patent

The threshold issue in this appeal is whether "improper revival" may be raised as an invalidity defense in an action involving the infringement or validity of a patent. The district court, relying on 35 U.S.C. §§ 282(2) and (4), decided that question affirmatively. The district court also found that the APA provided a separate basis upon which to review the PTO's revival of the '215 patent. We conclude that "improper revival" may not be raised as a defense in an action involving the validity or infringement of a patent.[2]

Section 282 of title 35 provides a catalog of defenses available in an action involving the validity or infringement of a patent:

(1)     Noninfringement, absence of liability for infringement or unenforceability,

(2)     Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,

(3)     Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,

(4)     Any other fact or act made a defense by this title.

---

[2]     Because it is on this basis that we decide the appeal, we do not reach the parties' alternative arguments, including those relating to whether the Patent Act permits revival for "unintentional"—as opposed to "unavoidable"—delay.

The first and third enumerated categories are not asserted by IGT as bases for its invalidity defense. At issue are the second and fourth. We discuss each in turn.

Section 282(2) authorizes an invalidity defense based "on any ground specified in part II of this title as a condition for patentability." A defense falling under this section thus has two prerequisites: it must fall within part II of title 35 and it must be a "condition for patentability." The district court determined that "[b]ecause Section 133's six-month deadline for prosecuting an application is specified within part II of Title 35, it necessarily provides an available defense where a patentee has abandoned, and failed to lawfully revive, a patent application." Aristocrat, 491 F. Supp. 2d at 930. What the district court failed to address, however, is whether the proper revival of an abandoned application is a "condition for patentability."

It has long been understood that the Patent Act sets out the conditions for patentability in three sections: sections 101, 102, and 103. See Graham v. John Deere, 383 U.S. 1, 12 (1966) ("The [1952 Patent] Act sets out the conditions of patentability in three sections. An analysis of the structure of these three sections indicates that patentability is dependent upon three explicit conditions: novelty and utility as articulated and defined in § 101 and § 102, and nonobviousness, the new statutory formulation, as set out in § 103."). These conditions are included in Chapter 10 of the Patent Act, entitled "Patentability of Inventions," and the titles of the sections themselves make clear that they relate to fundamental preconditions for obtaining a patent. Section 101, relating to utility and patent eligibility,[3] is entitled "Inventions Patentable." Likewise,

---

[3]     Although the Supreme Court in Graham referred only to the utility requirement aspect of section 101, as we often do, it is beyond question that section

sections 102 and 103, relating to novelty and nonobviousness, respectively, are explicitly entitled "[c]onditions for patentability."

While there are most certainly other factors that bear on the validity or the enforceability of a patent, utility and eligibility, novelty, and nonobviousness are the only so-called conditions for patentability. For example, section 112 unquestionably provides certain additional requirements for a patent to be valid, one of which, for instance, is that the patented invention be enabled by the specification. 35 U.S.C. § 112, ¶ 1. But the requirements in section 112 are not conditions for patentability; they are merely requirements for obtaining a valid patent. Indeed, section 282 itself draws a distinction between invalidity based "on any ground specified in part II of this title as a condition for patentability," 35 U.S.C. § 282(2), and invalidity "for failure to comply with any requirement of sections 112 or 251," 35 U.S.C. § 282(3). See Sextant Avionique, S.A. v. Analog Devices, Inc., 172 F.3d 817, 829 (Fed. Cir. 1999). Section 282(3), relating to invalidity under section 112, would be redundant if the requirements in section 112 were conditions for patentability because, if so, that defense would fall within the boundaries of section 282(2). Section 282(2), by virtue of its applicability to "condition[s] for patentability," relates only to defenses of invalidity for lack of utility and eligibility, novelty, and nonobviousness, and does not encompass a defense based upon the alleged improper revival of a patent application.

The district court also found that improper revival was an available defense under section 282(4), the catch-all provision of section 282, which provides a defense for

101's other requirement, that the invention be directed to patentable subject matter, is also a condition for patentability.

"[a]ny other fact or act made a defense by" title 35.  After reciting this statutory language, the district court concluded, "A fortiori, Section 282(4) must therefore incorporate Section 133 and 371(d)."  Aristocrat, 491 F. Supp. 2d at 929-30.  The error in the district court's analysis, however, is that it pretermits the fundamental requirement of the subsection—namely, that the act or fact is "made" a defense by the title.  This is not a trivial detail—if omitted, any provision in title 35 would provide a defense under section 282(4), and there would thus be no reason for the inclusion of sections 282(1) through (3).  If, as IGT suggests, Congress truly intended to permit any provision of title 35 to constitute a defense in an action involving the validity or infringement of a patent, it could have simply said, in one paragraph rather than four, that a defense lies in "any section of this title."  Consistent with our obligation to give meaning to all of the words in the statute, see Duncan v. Walker, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.  We are thus reluctant to treat statutory terms as surplusage in any setting." (internal quotation marks and citations omitted)), we decline to read the statute in this manner and therefore require that the asserted defense actually be "made a defense."

The salient question, then, is whether improper revival is "made a defense" by title 35.  We think that it is not.  Congress made it clear in various provisions of the statute when it intended to create a defense of invalidity or noninfringement, but indicated no such intention in the statutes pertaining to revival of abandoned applications.  For example, 35 U.S.C. § 273 is entitled "Defense to infringement based on earliest inventor" and expressly provides that the provision "shall be a defense to an action for infringement."  Similarly, 35 U.S.C. § 185 states that a patent issued to a

person who has violated the secrecy provisions of section 184 "shall be invalid," except under certain circumstances. Section 272 of title 35 provides that the temporary presence of a patented invention in the United States, if used exclusively for the needs of a vessel, aircraft, or vehicle, "shall not constitute infringement." The list goes on. What is important to note is simply that sections 133 and 371, relied upon by IGT, provide none of the signals that Congress has given in other circumstances to indicate that these sections provide a defense to an accused infringer. Rather, these provisions merely spell out under what circumstances a patent application is deemed abandoned during prosecution and under what circumstances it may be revived. See 35 U.S.C. § 133 ("Upon failure of the applicant to prosecute the application within six months . . ., the application shall be regarded as abandoned . . . ."); id. § 371 ("Failure to comply with these requirements shall be regarded as abandonment of the application . . . ."). Because the proper revival of an abandoned application is neither a fact or act made a defense by title 35 nor a ground specified in part II of title 35 as a condition for patentability, we hold that improper revival may not be asserted as a defense in an action involving the validity or infringement of a patent.

Our conclusion that improper revival is not a defense comports with the approach we took in Magnivision, Inc. v. Bonneau Co., 115 F.3d 956 (Fed. Cir. 1997), which we continue to believe is a sound one. In that case, we concluded that "[p]rocedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." Id. at 960; see also id. ("Imperfection in patent examination, whether by the examiner or

the applicant, does not create a new defense called 'prosecution irregularities' and does not displace the experience-based criteria of Kingsdown[ Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867 (Fed. Cir. 1988)].").  There is good reason not to permit procedural irregularities[4] during prosecution, such as the one at issue here, to provide a basis for invalidity.  Once a patent has issued, the procedural minutiae of prosecution have little relevance to the metes and bounds of the patentee's right to exclude.  If any prosecution irregularity or procedural lapse, however minor, became grist for a later assertion of invalidity, accused infringers would inundate the courts with arguments relating to every minor transgression they could comb from the file wrapper.  This deluge would only detract focus from the important legal issues to be resolved—primarily, infringement and invalidity.  We wish to stress, however, as we did in Magnivision, that where the procedural irregularity involves an "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive," it may rise to the level of inequitable conduct, and is redressible under that framework.  See Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1378 (Fed. Cir. 2008) (citations omitted); cf. Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1343-44 (Fed. Cir. 2003) (holding that accused infringer did not state valid claim for

---

4    We take this opportunity to point out that "prosecution irregularities" is distinct from "prosecution laches."  Prosecution laches stems not from any procedural lapse or irregularity during prosecution, but rather from an abuse of statutory provisions that results, as a matter of equity, in "an unreasonable and unexplained delay in prosecution."  Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., 422 F.3d 1378, 1385 (Fed. Cir. 2005).  Moreover, the legislative history of 35 U.S.C. § 282 suggests that it was intended to incorporate preexisting equitable defenses, including prosecution laches.  Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., 277 F.3d 1361, 1366 (Fed. Cir. 2002).

relief for "improper revival" following non-payment of maintenance fee where it failed to plead inequitable conduct).

We acknowledge that section 282 is not the only source of defenses in the Patent Act. See Quantum Corp. v. Rodime, PLC, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("Section 282 does not state that the list of invalidity defenses contained therein are the only ones available; the statute merely says '[t]he following shall be defenses.' The express words of section 282 therefore allow for the existence of other invalidity defenses."). To be sure, we have held, on occasion, that a provision of the Patent Act not falling within the literal scope of section 282 may nevertheless provide a defense of noninfringement or invalidity. In Quantum, for example, we held that a patentee who improperly enlarged the scope of its claims during reexamination, in violation of 35 U.S.C. § 305, subjected itself to a defense of invalidity, because any other result would "render[] the prohibition [against broadening claims] in section 305 meaningless." Id. We explained:

> If the only penalty for violating section 305 is a remand to the PTO to have the reexamined claims narrowed to be commensurate in scope with what the applicant was only entitled to in the first place, then applicants will have an incentive to attempt to broaden their claims during reexamination, and, if successful, be able to enforce these broadened claims against their competitors. . . . The likelihood that improperly broadened claims will be held invalid will discourage applicants from attempting to broaden their claims during reexamination.

Id. (internal citations omitted).[5]

---

[5] We also point out that since section 282(3) provides an invalidity defense for failure to comply with section 251, which in turn prohibits the broadening of claims in reissue applications after two years, 35 U.S.C. § 251 ¶ 4, the result in Quantum mirrors the statutory framework set out for the analogous reissue context. Cf. Quantum, 65 F.3d at 1583.

The analysis and result in <u>Quantum</u> are inapposite to this appeal. Even if we assume that the Patent Act permits revival of an application only upon a showing of unavoidable delay, a question that we expressly decline to reach in this appeal, none of the considerations that led us to the rule enunciated in <u>Quantum</u> compels a similar result here. A primary concern in <u>Quantum</u> was that failure to impose invalidity for violation of the statute would encourage noncompliance. That concern is simply not present here, as we discern no legitimate incentive for a patent applicant to intentionally abandon its application, much less to attempt to persuade the PTO to improperly revive it. Because patents filed after enactment of the Uruguay Round Agreements Act, like the patents at issue here, generally have a term that runs twenty years from the filing date (instead of seventeen years from issue), <u>cf.</u> <u>Merck & Co. v. Hi-Tech Pharmacal Co.</u>, 482 F.3d 1317, 1319 (Fed. Cir. 2007), abandoning the application would only serve to shorten the applicant's right to exclude.

We have considered IGT's arguments attempting to bolster the district court's decision under the APA, but find them unpersuasive. Under the circumstances of this case, the APA provides no relief to IGT.

## 2. The '603 Patent

The district court's conclusion with respect to the '215 patent ordained the fate of the '603 patent. Once it was determined that the '215 patent application was improperly revived, the '603 patent application, which was filed as a continuation application of the '215 patent application, was no longer able to claim priority to that application's effective filing date. As a result, the '215 patent application became prior art to the '603 patent. On this basis, the district court granted summary judgment that "the '603 Patent is

necessarily invalid [under 35 U.S.C. § 102(b)] because it was described in the published '215 PCT Application more than one year prior to its date of application." Aristocrat, 491 F. Supp. 2d at 936. Aristocrat argues that if the '215 patent application was properly revived, then the '603 patent retains priority to the '215 patent application's effective filing date, and therefore the '215 patent application is not prior art to the '603 patent. Thus, Aristocrat contends that if we reverse the district court's grant of summary judgment on the '215 patent, the district court's grant of summary judgment with respect to the '603 patent must also be reversed. IGT concedes the point, Appellees' Br. at 60 ("[I]t is undisputed that the validity of the '603 patent rests on the validity of the '215 patent . . . ."), and we agree. Because we have concluded that "improper revival" is not a cognizable defense and have reversed the district court's summary judgment in that regard, we also reverse the district court's grant of summary judgment of anticipation with regard to the '603 patent.

## III. CONCLUSION

For the reasons discussed above, we reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion.