**NORTHERN STATES POWER COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–5096.**

United States Court of Appeals, Federal Circuit.

Aug. 31, 2000.

Alexander D. Tomaszczuk, Shaw Pittman, of McLean, Virginia, argued for plaintiff-appellant. Of counsel on the brief were Jay E. Silberg, and Devon E. Hewitt, Shaw Pittman, of Washington, DC; and

Michael C. Connelly, Northern States Power Company, of Minneapolis, Minnesota.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Doris S. Finnerman, Trial Attorney. Of counsel on the brief were Marc Johnston, L. Dow Davis, IV, and Jane K. Taylor, Attorneys, Office of General Counsel, Department of Energy, of Washington, DC.

Steven L. Schooner, Associate Professor of Government, Contract Law, George Washington University Law School, of Washington, DC for Amici Curiae, Alabama Power Company, et al. Of counsel on the brief was Ralph C. Nash, Jr., Professor Emeritus.

Henry J. Boynton, Assistant Attorney General of Michigan, Public Service Division, Lansing, Michigan, for Amici Curiae State of Michigan, et al. With him on the brief were Jennifer M. Granholm, Attorney General of Michigan; Thomas L. Casey, Solicitor General; and David A. Voges, Assistant Attorney General. Of counsel on the brief were the following:

Lester M. Bridgeman, Special Deputy Attorney General, Miller, Hamilton, Snider, Odom, L.L.C., of Mobile, Alabama, for Alabama Public Service Commission.

Richard Blumenthal, Attorney General; Robert S. Golden, Jr. and Mark F. Kohler, Assistant Attorneys General, of New Britain, Connecticut for the State of Connecticut, et al.

Kevin P. Maloney, Deputy Attorney General, Department of Justice, of Wilmington, Delaware, for the State of Delaware.

Robert E. VanDiver, General Counsel; Richard C. Bellak, Associate General Counsel, of Tallahassee, Florida, for the Florida Public Service Commission.

Thurbert E. Baker, Attorney General; Robert Bomar, Deputy Attorney General; and Harold Melton, Senior Assistant Attorney General; and Daniel S. Walsh, Assistant Attorney General, of Atlanta, Georgia, for the Georgia Public Service Commission.

James E. Ryan, Attorney General; Carol R. Doris, Chief Deputy Attorney General; and Edward Washington, II, Chief, Public Interest Division, of Chicago, Illinois, for the State of Illinois.

Myra L. Karegianes, General Counsel and Special Assistant Attorney General; and John P. Kelliher, Special Assistant Attorney General, of Chicago, Illinois, for the Illinois Commerce Commission.

Jeffrey A. Modisett, Attorney General of Indiana; and Jon Laramore, Deputy Attorney General, Indiana Government Center South, of Indianapolis, Indiana, for the State of Indiana.

Ben Stead, Attorney, of Des Moines, Iowa, for the Iowa Department of Justice, Office of Consumer Advocate. Allan Kniep, Acting General Counsel, of Des Moines, Iowa, for Iowa Utilities Board.

Carla J. Stovall, Attorney General; John W. Campbell, Senior Deputy Attorney General, Kansas Judicial Center, of Topeka, Kansas, for the State of Kansas.

Michael R. Fontham, and Noel J. Darce, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., of New Orleans, Louisiana, for the Louisiana Public Service Commission.

Andrew Ketterer, Attorney General, of Augusta, Maine, for the State of Maine.

J. Joseph Curran, Jr., Attorney General; and M. Brent Hare, Assistant Attorney General, of Annapolis, Maryland, for the State of Maryland.

Susan Stevens Miller, Acting General Counsel, of Baltimore, Maryland, for the Maryland Public Service Commission.

Thomas F. Reilly, Attorney General; and Charles M. Wyzanski, Assistant Attorney General, of Boston, Massachusetts, for the Commonwealth of Massachusetts.

Mike Hatch, Attorney General; and J. Jeffery Oxley, Assistant Attorney General; of St. Paul, Minnesota, for the Minnesota Department of Public Service and State of Minnesota.

Mike Hatch, Attorney General; and Thomas Eric Bailey, Assistant Attorney General, of St. Paul, Minnesota, for the Minnesota Public Utilities Commission.

Mike Moore, Attorney General; and Frank Spencer, Special Assistant Attorney General, of Jackson, Mississippi, for the State of Mississippi.

George M. Fleming, and Patricia L. Trantham, Public Utilities Staff, of Jackson, Mississippi, for the Mississippi Public Service Commission.

Don Stenberg, Attorney General; and Linda L. Willard, Assistant Attorney General, of Lincoln, Nebraska, for the State of Nebraska.

Philip T. McLaughlin, Attorney General; and Wynn E. Arnold, Assistant Attorney General, Civil Bureau, of Concord, New Hampshire, for the State of New Hampshire.

John J. Farmer, Jr., Attorney General; Caroline Vachier and Elise Goldblat, Deputy Attorneys General, of Newark, New Jersey, for the New Jersey Board of Public Utilities.

Lawrence G. Malone, General Counsel, of Albany, New York, for the New York State Department of Public Service.

Sammy R. Kirby, Deputy General Counsel, of Raleigh, North Carolina, for the North Carolina Public Utilities Commission.

Heidi Heitkamp, Attorney General; and William W. Binek, Special Assistant Attorney General, of Bismarck, North Dakota, for the North Dakota Public Service Commission.

Lawrence C. Barth, Assistant Counsel; and Karen O. Moury, Deputy Chief Counsel, of Harrisburg, Pennsylvania, for the Pennsylvania Public Utility Commission.

Sheldon Whitehouse, Attorney General; and Paul J. Roberti, Assistant Attorney General, Chief, Regulatory Unit, of Providence, Rhode Island, for the State of Rhode Island and Providence Plantations.

F. David Butler, General Counsel, of Columbia, South Carolina, for the South Carolina Public Service Commission.

Rolayne Ailts Wiest, Commission Counsel, of Pierre, South Dakota, for the South Dakota Public Utilities Commission.

William H. Chambliss, Deputy General Counsel; and C. Meade Browder Jr., Attorney, Office of General Counsel, of Richmond, Virginia, for the Virginia State Corporation Commission.

David A. Ludwig, Legal Counsel, of Madison, Wisconsin, for the Wisconsin Public Service Commission.

Gary J. Newell; Spiegel & McDiarmid, of Washington, DC; and Richard B. Geltman, Corporate Counsel, American Public Power Association, of Washington, DC, for the American Public Power Association.

Charles D. Gray, General Counsel; and J. Bradford Ramsay, Assistant General Counsel, National Association of Regulatory Utility Commissioners, of Washington, DC, for the National Association of Regulatory Utility Commission.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal presents the same basic issue as *Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336 (2000), decided simultaneously herewith: Whether an electric utility may maintain a damage suit based on the government's alleged breach of a 1983 contract with it by which the government agreed, beginning no later than January 1, 1998, to dispose of the nuclear waste that the utility had generated, or was required first to file an administrative claim with the contracting officer under the contract's disputes provision. In *Maine Yankee*, the United States Court of Federal Claims denied the gov-

ernment's motion to dismiss the complaint, holding that the utility could maintain the suit, a decision we today affirm.

In the present case another judge of that court held that the utility was required first to proceed administratively under the disputes clause of the contract, and dismissed the complaint on the government's motion. We reverse.

## I

The background facts are set forth in our opinion in *Maine Yankee,* and need not be repeated in detail here.

Because of concerns over the disposal of nuclear waste accumulating at nuclear power plants, Congress in the Nuclear Waste Policy Act of 1982 ("the Act"), 42 U.S.C. §§ 10101–10270 (1994), authorized the Secretary of the Department of Energy ("the Department") to enter into contracts with utilities for the disposal of spent nuclear fuel ("SNF") and high-level radioactive waste. *See* 42 U.S.C. § 10222(a)(1) (1994). The Act required that all such contracts "shall provide that" the Department will dispose of the waste "beginning not later than January 31, 1998." *Id.* § 10222(a)(5)(B).

The Department promulgated a Standard Contract for Disposal of Spent Nuclear Fuel, 10 C.F.R. § 961.11 (1983). That contract required the utilities to pay a one-time fee, based on the amount of electricity generated prior to April 7, 1983, and an ongoing fee based on the amount of electricity generated thereafter. As the Act required, the contract (article II) obligated the Department to take title to, transport, and dispose of the nuclear waste beginning "not later than January 31, 1998."

The contract also contains several provisions dealing with delays, remedies and disputes. It provides that in case of "any delay in the delivery, acceptance or transport of SNF ... to or by DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay" (article IX.B); and that "[e]xcept as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer" (article XVI).

The appellee Northern States Power Company (Northern States) is an electric utility that has nuclear power generating facilities. It entered into a standard contract with the Department in 1983. In 1994, the Department announced that it could not begin disposing of nuclear waste by January 31, 1998, as the contract required, because the repository it planned to build to store the waste would not be available until at least 2010. *See* Notice of Inquiry, 59 Fed.Reg. 27,007, 27,007–08 (1994). One year later, in its "Final Interpretation of Nuclear Waste Acceptance Issues," the Department stated that "it does not have an unconditional statutory or contractual obligation to accept [nuclear waste] beginning January 31, 1998 in the absence of a repository or interim storage facility constructed under the Act." 60 Fed.Reg. 21,793 (1995).

Several utilities filed suit in the United States Court of Appeals for the District of Columbia Circuit challenging the Final Interpretation. That court held that the January 31, 1998 deadline was not conditioned on the availability of a repository, and vacated the Final Determination. *See Indiana Michigan Power Co. v. Department of Energy,* 88 F.3d 1272 (D.C.Cir. 1996). The Department then notified the utilities that it would not begin disposing of waste by the deadline. Citing the lack of a permanent repository or temporary storage facility, the Department characterized this failure to perform as an "unavoidable delay" under the contract, which was therefore not compensable.

Northern States and other utilities then filed in the District of Columbia Circuit a

petition for mandamus ordering the Department to meet the contractual deadline. The court refused to so order, stating that, if there were a delay, the utilities "must pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998." *Northern States Power Co. v. U.S. Department of Energy,* 128 F.3d 754, 759 (D.C.Cir.1997). The court, however, issued a writ of mandamus prohibiting the Department from relying on the unavoidable delays provision of the contract:

> [W]e preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or the that it has no authority to provide storage in the interim.

> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity." 10 C.F.R. § 961.11, Art. IX.A.

*Id.* at 760.

Northern States then filed a complaint in the United States Court of Federal Claims seeking damages for the Department's alleged breach of "its essential contractual obligation to begin disposing of SNF by January 31, 1998," which it stated "constitutes a material partial breach of its Standard Contract with NSP, for which NSP may seek recovery of its damages without exhausting any administrative remedies." Count I of the complaint alleged a partial breach of the standard contract, and count II alleged a breach of an "implied covenant of good faith and fair dealing" that the standard contract contains, "by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of SNF."

On the government's motion, the court dismissed the suit. It held that Northern States could not "seek to enforce its contract rights through a claim for breach damages in this court" because it "is obliged by the terms of its contract with DOE to pursue its demand for monetary relief at the agency level, i.e., through a claim for equitable adjustment submitted in accordance with the contract's disputes clause." *Northern States Power Co. v. United States,* 43 Fed.Cl. 374, 376 (1999).

The court first rejected the government's contention that the court of appeals decision in *Northern States Power* denying mandamus constituted res judicata that the "plaintiff is foreclosed from litigating a claim for breach of contract in this court, but is bound instead to pursue the contractual remedies set out in the Standard Contract." *Id.* at 381. The court stated that "although the D.C. Circuit largely denied the request for mandamus relief and directed plaintiff to pursue its administrative remedies, the court made no judgment about the sufficiency of those procedures beyond identifying them as offering 'a potentially adequate remedy.' ... Thus, it was simply the existence of those remedies as opposed to any determination regarding the completeness of the relief they afforded that explains the D.C. Circuit's decision." *Id.* at 381–82.

The court then held that the language of the delays clause " 'any delay in the delivery, acceptance, or transport of SNF' include[s] not only delays during performance but also delays preceding the commencement of performance." *Id.* at 383. The court rejected Northern States' argument that the clause applies only "to specific contingencies that arise after performance has begun, and not to circumstances where fulfillment of the bargain is expected to be put off for more than a decade." *Id.* at 382. Finally, the court rejected the plaintiff's contention that the contractual remedies "are inadequate and incomplete." *Id.* at 385. It stated: "The only consideration that counts is whether the parties' contract contains language that addresses the specific contingency to which the claim relates and specifies the adjustment that is to be provided in the event liability is

established. Where these twin considerations exist, the claim 'arises under' the contract," whether or not the contractual remedy "provide[s] a reasonably adequate substitute for the damages available in a breach action." *Id.* at 386.

## II

■ The government contends that in denying mandamus in *Northern States Power*, the D.C. Circuit held that the utilities were required to exhaust their contractual administrative remedies before seeking judicial relief. Since Northern States was a party to that case, the government argues, it is collaterally estopped from making its contrary contention here. The government reads too much into that decision.

In its earlier decision in *Indiana Michigan*, the court of appeals had vacated the Department's Final Interpretation that it was not required to accept nuclear waste until it had a repository for it, and concluded that the Department was under a statutory "obligation ... reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." 88 F.3d at 1277. The Department then announced that it would not begin disposing of waste by that deadline. In response, a group of utilities, including Northern States, sought mandamus from the court of appeals to compel the Department to begin disposal by that deadline. The court of appeals denied mandamus, "hold[ing] that the Standard Contract between DOE and the utilities provides a potentially adequate remedy if DOE fails to fulfill its obligations by the deadline." *Northern States Power*, 128 F.3d at 756.

The court first pointed out that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. Mandamus is proper only if ... there is no other adequate remedy to plaintiff." *Id.* at 758 (citations and internal quotation marks omitted). It concluded that this requirement was not satisfied because [the petitioners] are presented with another potentially adequate reme-

dy. Although the statute does not prescribe a particular remedy in the event that the Department fails to perform on time, the Standard Contract does provide a scheme for dealing with delayed performance. 10 C.F.R. § 961.11, Art. IX. Specifically, Article IX of the Standard Contract outlines how the parties are to proceed if one party is unable to fulfill its obligations in a timely manner.... If a party's delay is avoidable, the charges and schedules in the contract must be equitably adjusted to reflect additional costs incurred by the other party. Id. The contract also provides a mechanism for resolving disputes of fact that the parties may encounter along the way. See id. at Art. XVI.

Petitioners have not convinced us that this contractual scheme is inadequate to deal with DOE's anticipated delay in accepting the SNF.... Accordingly, we conclude that petitioners must pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998.

*Id.* at 759.

The court concluded:

[W]e do not grant petitioners' broad request for a writ of mandamus because we conclude that the remedial scheme of the Standard Contract offers a potentially adequate remedy.

*Id.* at 761.

The court's statements were all made in explaining why mandamus would not be appropriate, because the petitioners had "another potentially adequate remedy," namely, the scheme the Standard Contract provided "for dealing with delayed performance." The court twice characterized that remedy as "potentially adequate," and that was sufficient to deny mandamus.

The court did not focus on or address the issue presented here—whether the presence of the contractual administrative dispute resolution provisions precludes the present suit for breach of contract. The

court's concern was whether there was an alternative potential remedy available that made mandamus inappropriate; it held that there was. It was not required to, and did not determine the precise scope of that remedy. As the Court of Federal Claims stated in rejecting the government's similar argument, "it was simply the existence of those remedies as opposed to any determination regarding the completeness of the relief they afforded that explains the D.C. Circuit's decision." *Northern States Power*, 43 Fed.Cl. at 382.

■ It is a truism that bears repeating that broad language in an opinion must be read in light of the issue before the court. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Canadian Imperial Bank of Commerce v. Wells Fargo Bank*, 811 F.2d 1490, 1494 (Fed.Cir.1987). The court of appeals' statements in *Northern States Power*, made in explaining why it was denying mandamus, cannot properly be interpreted as a holding that the utilities were precluded from suing the government for breach of contract by the contract's administrative disputes resolution provision.

### III

■ On the merits, our opinion in *Maine Yankee* fully explains why we have concluded that the utilities may maintain their damage suit, and we need not repeat that discussion here. In brief, we hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998.

The only possibly significant factual distinction between *Maine Yankee* and this case is that there the utility had ceased to operate its nuclear power plant prior to April 3, 1983, and therefore had to pay only a single fee covering power generated prior to that date. Northern States, however, has continued to operate its nuclear plants and, therefore, has had to pay not only the single fee for power generated before that date but also the continuing fees for electricity generated thereafter.

In our *Maine Yankee* opinion we pointed out that it was unclear whether the amount the company had paid for electricity generated before April 17, 1983 could be equitably adjusted at all under the unavoidable delays clause. The same problem does not arise with respect to the charges Northern States paid after that date, which presumably are subject to equitable adjustment. For the reasons set forth in our *Maine Yankee* opinion, however, that factual difference between the two cases does not warrant a different outcome in them.

Our *Maine Yankee* decision also requires reversal of the Court of Federal Claims' dismissal of count II of the complaint, which alleges that the government breached its implied contractual covenant of good faith and fair dealing.

### CONCLUSION

The judgment of the Court of Federal Claims dismissing the complaint is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*