# United States Court of Appeals for the Federal Circuit

---

**SYSTEM FUELS, INC., SYSTEM ENERGY RESOURCES,**
**AND SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Cross Appellant.*

---

2010-5116, -5117

---

Appeals from the United States Court of Federal Claims in Case No. 03-CV-2624, Judge Susan G. Braden.

---

Decided: January 19, 2012

---

ALEX D. TOMASZCZUK, Pillsbury Winthrop Shaw Pittman, LLP, of McLean, Virginia, argued for plaintiffs-appellants. With him on the brief were JAY E. SILBERG, of Washington, DC; and EVAN D. WESSER, of McLean, Virginia. Of counsel on the brief was L. JAGER SMITH, JR., Wise Carter Child & Caraway, P.A., of Jackson, Mississippi.

ALAN J. LO RE, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, HAROLD D. LESTER, JR., Assistant Director, SHARON A. SNYDER, Trial Attorney, MARIAN E. SULLIVAN and ANDREW P. AVERBACH, Senior Trial Counsel; and SCOTT R. DAMELIN, Trial Attorney. Of counsel on the brief was JANE K. TAYLOR, Attorney, Office of General Counsel, United States Department of Energy, of Washington, DC.

_____

Before RADER, *Chief Judge*, NEWMAN and DYK, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* RADER. Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* NEWMAN.

RADER, *Chief Judge*.

On summary judgment, the United States Court of Federal Claims determined that the United States breached its contract with Plaintiffs-Appellants System Fuels, Inc., System Energy Resources, and South Mississippi Electric Power Association (collectively "Plaintiffs") for the removal of spent nuclear fuel. *Sys. Fuels, Inc. v. United States*, 66 Fed. Cl. 722, 732-33 (2005) ("*SFI I*"). The trial court also granted summary judgment in favor of the Government regarding the implied covenant of good faith and fair dealing. *Id.* at 735. The trial court set damages for the breach at $10,014,114 as well as the cost of borrowed funds for financing the construction of the dry fuel storage project. *Sys. Fuels, Inc. v. United States*, 78 Fed. Cl. 769, 809 (2007) ("*SFI II*"). On reconsideration, the trial court reduced damages to $9,735,634 and denied

the cost of borrowed funds. *Sys. Fuels, Inc. v. United States*, 92 Fed. Cl. 101, 114 (2010) ("*SFI III*"). This court affirms the trial court's denial of borrowing costs and reverses the denial of overhead costs. On damages, this court affirms the trial court's award.

## I.

In 1983, Congress enacted the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. No. 97-425, 96 Stat. 2201 (codified at 42 U.S.C. §§ 10101–10270 (2006)), to provide for the Government's collection and disposal of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW"). The NWPA authorized the Department of Energy ("DOE") to contract with the owners of SNF and HLW for disposal. 42 U.S.C. § 10222(a)(1). In return for the payment of fees into the Nuclear Waste Fund, the Standard Contract provided that the DOE would begin to dispose of the SNF and HLW "not later than January 31, 1998." 42 U.S.C. § 10222(a)(5)(B); 10 C.F.R. § 961.11 (2011). The Standard Contract provides that "[t]he Purchaser shall arrange for, and provide, all preparation, packaging, required inspections, and loading activities necessary for the transportation of SNF and/or HLW to the DOE facility." 10 C.F.R. § 961.11 (Article IV.A.2). Because collection and disposal of SNF and HLW did not begin on January 31, 1998, this court held in *Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000), and *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1343 (Fed. Cir. 2000), that the DOE had breached the Standard Contract with the nuclear energy industry. This case examines another chapter in the lengthy search for remedies for breach of the Standard Contract.

On June 30, 1983, System Fuels, Inc. entered into the DOE's Standard Contract on behalf of itself, System

Energy Resources, and South Mississippi Power Association. *SFI I*, 66 Fed. Cl. at 725. System Energy Resources and South Mississippi Power Association own Grand Gulf Nuclear Station ("Grand Gulf"). System Fuels, Inc. served as the purchaser under the Standard Contract. *Id.* The Nuclear Regulatory Commission issued a license to System Fuels, Inc. and South Mississippi Power Association to operate Unit 1 of Grand Gulf, whose SNF is stored in a "wet pool." *Id.* In 2002, Plaintiffs began preparations to construct an Independent Spent Fuel Storage Installation ("ISFSI") capable of holding additional dry storage containers of SNF until DOE complied with its removal obligations. Plaintiffs anticipated that the "wet pool" would reach capacity in 2007. *Id.*; *SFI II*, 78 Fed. Cl. at 783. The record shows that System Energy Resources and South Mississippi Power Association have paid almost $148 million into the Nuclear Waste Fund in accordance with the terms of the applicable fee schedule of the Standard Contract. The Government has not begun performing its duties and responsibilities under the Standard Contract. *SFI I*, 66 Fed. Cl. at 725, 730. As of March 4, 2005, Plaintiffs alleged that they had spent approximately $4.75 million to construct the ISFSI. *Id.* at 732-33. After this court rendered its decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), Plaintiffs amended the complaint to allege that they had incurred $12,178,000 in costs to plan and construct the ISFSI at Grand Gulf to mitigate breach damages. *SFI II*, 78 Fed. Cl. at 771.

Every 18 months, the reactor at Grand Gulf shuts down to facilitate removal of fuel assemblies, which are then placed in two onsite storage facilities for 20 to 25 days during routine maintenance. *Id.* at 779. In an effort to explore their options for dry fuel storage, Plaintiffs sought guidance from an engineering services firm in the

commercial nuclear industry.  This firm recommended the
"best short-term option for increasing spent fuel storage
capacity at Grand Gulf was to recover cells currently
inaccessible in the existing [onsite storage facilities]."  *Id.*
at 780.  Plaintiffs also contracted with a dry cask storage
system company and explored long-term options.  Plain-
tiffs undertook construction of dry fuel storage because
the core of the Grand Gulf reactor would reach capacity in
2007, and, by their estimates, the Government would not
remove waste until 2022.  *Id.* at 781.  As a business
practice, Plaintiffs maintain a full core reserve—a prac-
tice beyond current federal requirements.  *Id.* at 782.
Plaintiffs determined that they could maintain this busi-
ness practice through 2005 and, with cell recovery efforts,
accommodate the SNF and HLW discharges through
2007. *Id.* at 782-83.

In constructing the ISFSI, Plaintiffs created six cate-
gories of capital work operations:  spent fuel studies,
ISFSI design and construction, cask fabrication facility,
dry fuel equipment storage building, ISFSI electrical and
security systems, and auxiliary building door modifica-
tion.  Plaintiffs recorded and tracked costs associated with
the dry fuel storage facility.  *Id.* at 783.  Plaintiffs sought
damages for the capital work operations, totaling
$10,591,000, and cost of capital to finance these opera-
tions, totaling $1,587,000.  *Id.* at 783, 785.

The trial court held an eight-day trial on damages.
*Id.* at 773 n.2.  The trial court did not specify an accep-
tance rate of spent fuel but determined that Plaintiffs
should be awarded over $10,014,114 in mitigation dam-
ages for their capital work operations.  *Id.* at 794, 809.
The award did not include the cost of borrowed funds
because, even though the trial court determined that
Plaintiffs were entitled to recover this amount, it needed
clarification  and  sought  additional  expert  testimony

before making a final decision concerning mitigation damages. *Id.* at 809-10.

The trial court revisited its causation analysis after this court rendered the following decisions: *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008); *Pacific Gas & Electric Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008); *Sacramento Municipal Utility District v. United States*, 293 Fed. Appx. 766 (Fed. Cir. 2008). *SFI III*, 92 Fed. Cl. at 102. The trial court held evidentiary hearings concerning causation and addressed the claim for the costs of borrowed funds. *Id.* at 103-05. The trial court reduced the amount of damages previously awarded to Plaintiffs for their "cell recovery efforts" and determined that *England v. Contel Advanced Systems, Inc.*, 384 F.3d 1372, 1379 (Fed. Cir. 2004), barred the grant of an award for the cost of borrowed funds. 92 Fed. Cl. at 108, 111-12.

Plaintiffs appeal the trial court's refusal to award the cost of borrowed funds and overhead costs as mitigation damages. The Government appeals on the ground that the trial court's causation analysis did not include a comparison of breach and non-breach worlds under the Standard Contract. This court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.

This court reviews the factual findings of the United States Court of Federal Claims for clear error, *Ind. Mich.*, 422 F.3d at 1373, including "the general types of damages awarded . . . , their appropriateness . . . , and rates used to calculate them . . . ," *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1347 (Fed. Cir. 2005). "A finding may be held clearly erroneous when . . . the appellate court is left with a definite and firm conviction that a mistake has been committed." 422 F.3d at 1373 (quoting *In re Mark*

*Indus.*, 751 F.2d 1219, 1222-23 (Fed. Cir. 1984)). This court reviews the trial court's legal conclusions without deference. *Yankee Atomic*, 536 F.3d at 1272. This court provides the trial court with wide discretion in determining an appropriate quantum of damages. *Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1382 (Fed. Cir. 2004).

### III.

Plaintiffs sought $1,587,000 as damages for the cost of borrowed funds to construct their dry fuel storage facility. *SFI II*, 78 Fed. Cl. at 785. The trial court stated that its authority to award interest on a claim of damages is governed by the Judiciary and Judicial Procedure Rules of Decision Act, which states that "interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." *SFI III*, 92 Fed. Cl. at 110 (quoting 28 U.S.C. § 2516(a)) (internal citations omitted).

As this court stated in *England*, "[t]he no-interest rule is an aspect of the basic rule of sovereign immunity." 384 F.3d at 1379 (citing *Library of Cong. v. Shaw*, 478 U.S. 310, 315 (1986); *Smith v. Principi*, 281 F.3d 1384 (Fed. Cir. 2002)). This no-interest rule denies claims for interest and "interest costs incurred on money borrowed as a result of the government's breach or delay in payment." 384 F.3d at 1379 (citing *J.D. Hedin Constr. Co. v. United States*, 456 F.2d 1315, 1330 (Ct. Cl. 1972); *Komatsu Mfg. Co. v. United States*, 131 F. Supp. 949, 950 (Ct. Cl. 1955); *Ramsey v. United States*, 101 F. Supp. 353, 356-57 (Ct. Cl. 1951); *Myerle v. United States*, 33 Ct. Cl. 1, 25 (1897)).

Although expressing concerns about the policy and uniform application of *England*, the trial court ultimately applied the rule of that case and denied interest. In

*Energy Northwest v. United States*, issued after the trial court's judgment in the present case, this court addressed those concerns and reaffirmed *England*, distinguishing it from cases where the Government has been held liable for interest. 641 F.3d 1300, 1310-12 (Fed. Cir. 2011). *England* therefore controls this case. Because the trial court properly applied *England*, this court affirms the trial court's denial of the cost of borrowed funds.

IV.

Plaintiffs incurred additional overhead costs when managing the six capital work operations. Plaintiffs maintained a separate accounting for overhead costs, consistent with the Generally Accepted Accounting Principles and Federal Energy Regulatory Commission ("FERC") regulations. The separate accounting, referred to as the "capital suspense loader," includes the cost of administrative and engineering personnel supporting capital construction projects. J.A. 348-49, 351. These overhead costs consist of two pools: (1) administrative and general costs for personnel at corporate headquarters and (2) nuclear-specific costs for personnel at the Nuclear South headquarters and Grand Gulf site. J.A. 349. The trial court acknowledged that "DOE was aware that Plaintiffs were required to account to FERC for all costs incurred." *SFI II*, 78 Fed. Cl. at 791. Originally, the trial court withheld these costs for lack of proof with "reasonable certainty." *Id.* at 800. Plaintiffs then provided additional analysis showing that costs associated with the "capital suspense loader" were $497,619. The trial court then offset the overall damages awarded to Plaintiffs by this amount. *SFI III*, 92 Fed. Cl. at 104-05, 108.

As explained in *Indiana Michigan*, "[d]amages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the

time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." 422 F.3d at 1373 (citing *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1320 (Fed. Cir. 2002)). In *Carolina Power & Light Co. v. United States*, this court affirmed the trial court's awarding of overhead costs to a utility whose "internal accounting system uses specific codes to allocate a portion of [the overhead expenses] to particular projects . . . ." 573 F.3d 1271, 1276-77 (Fed. Cir. 2009). This court has previously determined that "the amount of damages need not be 'ascertainable with absolute exactness or mathematical precision,' [but that] recovery for speculative damages is precluded." *Ind. Mich.*, 422 F.3d at 1373 (quoting *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997)). In *Energy Northwest*, this court found that "mitigation activities generally were supported by certain overhead services that Energy Northwest provided for the benefit of all its operations (not only its mitigation activities)." 641 F.3d at 1309. This court made such a determination based on testimony "estimating the portion of . . . overhead costs fairly allocated to support . . . the mitigation via generally accepted accounting practices . . ." *Id.*

Thus, Plaintiffs may recover overhead costs incurred for mitigation-related work. The record shows that Plaintiffs used an internal accounting system with particular codes for the "capital suspense loader." Further, the record shows that the internal accounting system allocates on a monthly basis the overhead associated with the pool and charges accounts for the appropriate project. J.A. 348-50. Thus, Plaintiffs used accounting procedures "as mandated by FERC," J.A. 349, and "consistent with Generally Accepted Accounting Principles," J.A. 351. The trial court clearly erred in finding that these accounting

records did not "demonstrate the effect of the mitigation project on the capital pools entitlement with 'reasonable particularity.'"

Therefore, because the record fully supports Plaintiffs' proof of overhead costs, this court reverses the trial court's grant of offset of damages for the "capital suspense loader" overhead costs.

V.

In *Yankee Atomic*, this court determined that a SNF utility company "had the burden to provide the contractual acceptance rate and apply that rate before suggesting that the Government's breach was a substantial factor in causing the [Plaintiffs'] claimed expenses." 536 F.3d at 1273. This court went further to state that "[w]ithout record evidence about the [utility's] condition with full Government performance, the Court of Federal Claims could not perform the necessary comparison between the breach and non-breach worlds and thus could not accurately assess the [Plaintiffs'] damages." *Id.* Plaintiffs bear the burden to establish the alleged mitigation costs were caused by the breach. *Energy Nw. v. United States*, 641 F.3d 1300, 1307 (Fed. Cir. 2011). "[A] defendant must move forward by pointing out the costs it believes the plaintiff avoided because of its breach," but "with respect to both claimed costs and avoided costs, plaintiffs bear the burden of persuasion." *S. Nuclear Operating Co. v. United States*, 637 F.3d 1297, 1304 (Fed. Cir. 2011); *see also Boston Edison Co. v. United States*, 658 F.3d 1361, 1369 (Fed. Cir. 2011) (the Government "may be responsible for affirmatively pointing out costs that were avoided" due to the breach, but once the Government has identified the plaintiff's avoided costs, "the plaintiff must incorporate them into a plausible model of the damages"); *Energy Nw.*, 641 F.3d at 1308 n.5 ("Once the defendant has

properly articulated an offset, the burden shifts to the plaintiff to incorporate those saved costs into its formulation of a plausible but-for world." (internal quotation marks omitted)). While in some places the trial court, without the benefit of our most recent cases, inaccurately placed the burden of proof on the Government, we do not think that this error affected the result.

In *SFI II*, the trial court determined that Plaintiffs' mitigation was foreseeable:

> [T]he record contains clear and convincing evidence that on June 30, 1983, it was "foreseeable" to DOE that, if performance could not be commenced by January 31, 1998, Plaintiffs would have to make interim arrangements to store SNF and HLW and DOE could have foreseen that such interim arrangements could entail the need to plan, design, and construct dry fuel storage and the [sic] incur costs to borrow funds to finance those mitigation efforts.

78 Fed. Cl. at 791. Additionally, the trial court determined that the costs of modification of the auxiliary building were "incurred to mitigate the Government's partial breach." *Id.* at 801. The trial court analyzed the costs associated with the auxiliary building modifications, procedures and programs to use the casks and dose assessment, implementation of the transfer and haul paths for the casks, and scaffolding. *Id.* at 800-06. The trial court's analysis was based on the costs included in Plaintiffs' claims for damages, offsets asserted by the Government, and comparison of "the real world versus the costs of the modifications in the non-breach world." *Id.* at 800. The trial court determined that Plaintiffs' costs were reasonable for several of the auxiliary building modifications and implementation of the transfer and haul paths

for the casks. *Id.* at 801-04, 805. In contrast, the trial court awarded offsets for (i) the procedures and programs to use the casks and dose assessment and (ii) a portion of the scaffolding costs. *Id.* at 804, 805-06.

In *SFI III*, the trial court weighed evidence concerning causation of the contested damages and application of the 1987 Annual Capacity Report Rate. 92 Fed. Cl. at 103-04. The trial court heard testimony concerning Grand Gulf in breach and non-breach worlds and "determine[d] that [Plaintiffs] would have performed the cell recovery project even if DOE accepted SNF at Grand Gulf in 2006" and offset Plaintiffs' award for damages based on the "appropriate 'related' costs." *Id.* at 104. The trial court stated that Plaintiffs "advised the court that three adjustments should be made to the prior costs claimed," which related to offsetting costs associated with Plaintiffs' claims for "payroll loader," "capital suspense loader," and "equipment purchased, sequence design, and dose assessment." *Id.* at 104-05.

The trial court also weighed evidence regarding the "cell recovery effort." After comparing the breach and non-breach worlds, the trial court determined that Plaintiffs were "not entitled to include[ ] $184,208 for the cell recovery effort as damages." *Id.* at 105-06. The trial court then applied this court's holding in *Yankee Atomic*, 536 F.3d at 1268, and determined that the "reasonable foreseeability element was satisfied" and "the necessity to proceed with dry fuel storage at Grand Gulf . . . was caused by both the partial breach and DOE's inability to guarantee the commencement of performance by 2005, when the spent fuel pool would reach capacity." *SFI III*, 92 Fed. Cl. at 107. The trial court discredited Plaintiffs' expert testimony regarding performance in a non-breach world because the expert was "not qualified to testify about nuclear power plant operations." *Id.* at 108. The

trial court offset Plaintiffs' damages by $184,208 and awarded Plaintiffs $9,735,634 in nominal damages because the trial court determined that Plaintiffs did not meet their burden to prove that Plaintiffs would not have engaged in "cell recovery efforts" but for the Government's breach. *Id.* at 108.

Review of the record shows that the trial court's damages analysis in *SFI II* included comparison between breach and non-breach worlds, and offsets were awarded where appropriate. In *SFI III*, the record confirms the trial court's application of the 1987 Annual Capacity Report Rate and also applicable additional adjustments. The record evidence further supports the trial court's comparison between the breach and non-breach worlds for the assessment of damages. This court discerns no error in these determinations. Thus, the trial court accurately addressed causation as set forth by *Yankee Atomic* and applied offsets as necessary. This court affirms the trial court's causation analysis and its revised nominal damages award.

## VI.

Because the trial court properly adhered to the decision of *England*, this court affirms the denial of Plaintiffs' claim for the cost of borrowed funds. This court reverses the trial court's denial of overhead costs. This court affirms the trial court's causation analysis and revised award of nominal damages.

**AFFIRMED-IN-PART AND REVERSED-IN-PART.**

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals
## for the Federal Circuit

---

**SYSTEM FUELS, INC., SYSTEM ENERGY RESOURCES, AND SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES,**
*Defendant-Cross Appellant.*

---

2010-5116, -5117

---

Appeal from the United States Court of Federal Claims in Case No. 03-CV-2624, Judge Susan G. Braden.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

In this arena of varied Federal Circuit pronouncements on diverse facts, the court now carves an exception into the rule that damages due to breach of contract shall render the injured party monetarily whole. The rule, applicable to the government as to all contracting entities, is that when the non-breaching party is required to incur expenditures in order to mitigate the consequences of breach, the cost of those expenditures is compensable as damages. That cost of mitigation is not "interest on a claim," but a component of damages. Thus the "no-interest rule" is inapplicable. I

respectfully dissent from the portion of the court's decision that denies recovery of such damages.

## DISCUSSION

Analytical care is required to avoid blurring the distinction between the cost of money expended to mitigate a breach and interest awarded on a judgment for damages. The "non-interest" statute is directed to interest on an adjudicated claim:

> 28 U.S.C. §2516.  Interest on claims and judgments

> (a) Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof.

This statute does not apply to the System Fuels situation. System Fuels incurred capital costs to construct an Independent Spent Fuel Storage Installation, a facility that was required to be constructed in view of the government's partial breach of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste. "All capital raised by a corporation has a cost . . . ." *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1375 (Fed. Cir. 2003).  The Court of Federal Claims stated that the record establishes that System Fuels incurred $1,587,000 as cost of the capital expended to mitigate this breach.[1]  This cost is not "[i]nterest on a claim . . . in a judgment," and denial of recovery of this cost contravenes the principle that "[t]he remedy for breach of contract is damages sufficient to place the injured party in as good a

---

[1]   *System Fuels, Inc. v. United States*, 92 Fed. Cl. 101, 111 n.6 (2010).

position as it would have been had the breaching party fully performed." *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). System Fuels' cost of the capital required to mitigate the government's breach is substantive damages, not interest on a claim.

This distinction has long been recognized. In *Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986), the Court explained that "interest is an element of damages separate from damages on the substantive claim." In *Shaw* the Court denied the enlargement in Title VII attorney fees due to delay in payment of the fees; the Court did not state a rule about costs of capital. Precedent well illustrates that the "no-interest rule" is not a bar to substantive damages. *E.g.*, *Peoria Tribe of Indians of Okl. v. United States*, 390 U.S. 468, 471, 473 (1968) (rejecting the government's invocation of the no-interest rule, and holding the government liable "for its failure to invest the proceeds that would have been received had the United States not violated the treaty"); *Larson v. United States*, 274 F.3d 643, 646 (1st Cir. 2001) (explaining that the award by the United States of investment proceeds on seized funds in *United States v. Kingsley*, 851 F.2d 16 (1st Cir. 1988) was not an award of prejudgment interest because "the award was in the form of damages directly caused by" the government's breach of a plea agreement).

Recognition that damages include the cost of the money expended in mitigation is exemplified in the FIRREA cases, *e.g.*, *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1357 (Fed. Cir. 2001) ("the increased financing costs" represented in the Economic Benefits Agreement are recoverable as damages); *LaSalle Talman*, 317 F.3d at 1374-75 (damages can include "the cost of capital"); *Citizen Fed. Bank v. United States*, 474 F.3d 1314, 1320 (Fed. Cir. 2007) (damages include the "expenses it incurred in replacing its

regulatory capital after FIRREA had precluded thrifts from using regulatory goodwill or subordinated debt as regulatory capital"). The analogy is apt, for here System Fuels expended capital to provide storage facilities after the government breached its contract to store the spent fuel.

"Government liability in contract is viewed as perhaps 'the widest and most unequivocal waiver of federal immunity from suit.'" *United States v. Mitchell*, 463 U.S. 206, 215 (1983) (quoting *Developments in the Law – Remedies Against the United States and Its Officials*, 70 Harv. L. Rev. 827, 876 (1957)); *see United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28, 32 (1915) (the Tucker Act is a "great act of justice").

Law and precedent establish government liability for the cost of mitigation, where government breach requires expenditures in mitigation. In *Mobil Oil Exploration & Producing Se., Inc. v. United States*, 530 U.S. 604, 607-08 (2000) the Court reinforced that "[w]hen the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals," quoting *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (plurality opinion). This court in *Indiana Michigan* applied "the general principle is that all losses, however described, are recoverable." 422 F.3d at 1373 (quoting *Restatement (Second) of Contracts* §347 cmt. c (1981)). The Restatement explains that "the injured party is entitled to recover for all loss actually suffered. . . . includ[ing] costs incurred in a reasonable effort, whether successful or not, to avoid loss." §347 cmt. c.

The government's argument that recovery of mitigation costs is precluded by its reinterpreted "no-interest rule" is as inappropriate as it is incorrect, and should be rejected by the court, not adopted and enlarged. As stated in *Indian*

*Towing Co. v. United States*, 350 U.S. 61, 69 (1955), the court is not a "self-constituted guardian of the Treasury." My colleagues err in holding that the cost of mitigation of governmental breach of contract cannot include the cost of the money expended in mitigation.  I respectfully dissent.