LINN, Circuit Judge,
dissenting in part.
The majority concludes that when the Kansas Companies used Federal Energy Regulatory Commission (“FERC”)-compli-ant accounting practices to allocate over *1372 head to their mitigation efforts, they were dispositively entitled to recover the full amount of that overhead as damages. I respectfully disagree. When, as here, a trial court is presented with evidence that regulatory-accounting practices were used to calculate the amount of overhead attributable to mitigation projects, that amount is presumptively a correct measure of damages for overhead. And our precedent firmly establishes that a trial court is not free to disregard it simply because it questions the precision of the accepted accounting practice. But the fact that a regulatory-compliant accounting practice is followed should not prevent a trial court from considering other record evidence showing that the amount claimed as damages based on such accounting practice is grossly disproportionate to the actual damages incurred. Nor does it overshadow the substantial discretion a trial court enjoys in crafting its damages award or the clear error standard of review applicable to fact questions such as this.
Here, the United States Court of Federal Claims (“trial court”) did not disregard evidence of accepted accounting practices. Rather it determined, in view of the record as a whole, that in this case such practices reflected an overhead amount that was a demonstrably inaccurate reflection of the damages incurred. Rather than simply deny overhead damages altogether, the trial court used all of the evidence of record to craft a more correct and therefore more reasonable award. In so doing, the trial court carefully considered the record in general, and the testimony of the experts in particular, in treating as an issue of first impression the question of whether the total-cost overhead allocation methodology provided a correct measure of damages. Kan. Gas & Elec. Co. v. United States, 95 Fed.Cl. 257, 307 (2010). In analyzing this question, the trial court first observed that plaintiffs’ damages expert, Professor Jerold Zimmerman, who testified that this methodology was reasonable and for a “valid business purpose”:
never asked for or was given Wolf Creek’s raw financial data, nor did he talk with Wolf Creek’s accounting personnel. ... [Nor was he asked] to review whether Wolf Creek’s $3.7 million in claimed construction and material overheads derived from the correct measure of damages. Tr. at 1865. In fact, Prof. Zimmerman admitted that he was not “charge[d]” with “opining on the numbers”.... Tr. at 1883 (“Well I didn’t have to [review Wolf Creek’s raw financial data] to assess the logical flaws in [defendant’s expert,] Mr. Johnson’s report. Since I wasn’t opining on the numbers, one can look at the logical analysis and say whether the logic is correct without actually looking and testing the numbers.”).
Id. The trial court also looked to the testimony of defendant’s expert, R. Larry Johnson, and noted:
Mr. Johnson testified that the total-cost method is not widely used in the cost accounting community. Tr. at 1705-06 (citing, inter alia, Professor Zimmerman’s cost accounting textbook analysis of a survey of allocation methodologies using 293 respondents in which total-cost method does not appear).... Mr. Johnson analogized how the total-cost method creates disproportionate overheads to the use of “gold wire” rather than steel in constructing a wheel. If five different projects each had $100.00 in labor overhead, a total of $500.00 in direct labor would be allowed, and each project would receive a twenty percent (or $20.00) allocation of overhead based on the labor. Mr. Johnson then added the material costs of steel wire to four of the five projects costing $10.00 each, but the fifth project used gold wire costing *1373 $1000.00. Because the amount of labor expended remains constant, the fifth project does not consume more overhead resources. However, under the total-cost allocation, four of the projects would receive a $7.00 overhead allocation rather than $20.00, and the gold wire project would receive $72.00.
Id. at 306.
Based on a meticulously-documented examination of the factual record, the trial court explained that it had:
no quarrel with [the] characterization of Wolf Creek’s use of the total-cost method as a reasonable form of cost accounting for business purposes.... However, what makes for good business accounting does not translate automatically into a fair and reasonable apportionment of damages.... [Rather,] the allocation method used to calculate these overhead amounts must bear some relationship to the resources actually expended. In cross-examining Mr. Robke, [who was responsible for accounting on the rerack project,] defendant established that the construction material costs— that is, the cost of the racks — bore no relationship to Wolf Creek’s resources expended on the rerack project.... [T]he exchange with Mr. Robke shows that, if the racks did — hypothetically— cost $12 million rather than $6 million, the total-cost allocation methodology doubles the overhead allocated for those materials without any actual change in internal resources.... The material cost of the rerack project clearly was not the driver of the construction overheads, and it did not affect the internal support provided to the project.
Id. at 308.
The trial court thus determined “that the total-cost method’s inclusion of the cost of construction materials in its allocation base unreasonably inflates the amount of construction overheads” and, on the facts found, cannot be solely relied upon to support a reasonable damages award. Id. at 309.
I see no error, let alone clear error, in the trial court’s careful treatment of the evidence in making its reasonable damages determination. The majority points to no clear error and, indeed, makes only passing reference to the record in its analysis. Without addressing the expert testimony or the trial court’s findings of fact, the majority concludes that because “[t]he Kansas Companies used an internal accounting system which coded costs to specific projects, [because] the allocation rates were re-examined on a regular basis in order to reflect actual capital project costs, and [because] the total-cost allocation method complied with required FERC accounting regulations” the trial court’s “denial of damages for overhead costs ... [was] inconsistent with precedent and the record.” Maj. Op. at 1370. While the majority’s statements all sound eminently reasonable, they fail to consider the real issue. As noted above, the trial court did not take issue with the accounting method as being reasonable, nor with the premise that it was accurately applied. Rather, it rested its decision on the observation that if plaintiffs were allowed to include the cost of disproportionately expensive materials in the total cost analysis, the government unreasonably would be held responsible for costs that had nothing to do with the capital project to which they had been attributed or with the government’s breach. To this point, the trial court quoted the testimony of Mr. Johnson, who explained:
Did [Wolf Creek’s] accounting department incur more costs because [they] bought $6 million in casks? Did [Wolf Creek’s] human resources department incur more costs because [they] bought $6 million in casks? And the answer I think to those things has to be “no.”
*1374 95 Fed.Cl. at 308-9. As the trial court then stated, “Plaintiffs failed to rebut this argument.” Id. at 309. Thus, the whole point of the trial court’s explanation is that even assuming plaintiffs correctly used the total-cost methodology to calculate overhead, the resulting damages request, given the facts of this case, was simply wrong.
The majority does not address the evidence or the trial court’s reasoning based on the record, but instead relies on System Fuels, Inc. v. United States, 666 F.3d 1306 (Fed.Cir.2012), and Consolidated Edison Co. of New York v. Entergy Nuclear Indian Point 2, LLC, 676 F.3d 1331 (Fed.Cir.2012), to elide the significance of the facts found. In my view, neither System Fuels nor Consolidated Edison supports such treatment because neither of those cases can be fairly read to stand for the proposition that once it is established that an accepted accounting method was used, the trial court’s role in finding the correct measure of overhead damages is at an end. And nothing in either case says that the trial court must disregard contrary evidence once accounting compliance has been shown.
In System Fuels, this court explained that the trial court clearly erred when it found that records of generally accepted accounting practices “did not demonstrate the effect of the mitigation project on [overhead pools] with reasonable particularity.” System Fuels, 666 F.3d at 1312 (quotations omitted). But there, the trial court refused to award any amount merely because “[p]laintiffs ... were unable to verify exactly what portion of the capital suspense loader was incurred for work exclusively on [the mitigation project].” System Fuels, Inc. v. U.S., 78 Fed.Cl. 769, 800 (2007) (emphasis added). Similarly, in Consolidated Edison, this court applied System Fuels in rejecting the trial court’s determination that accepted accounting methodology was “too ‘imprecise.’ ” Consol. Edison, 676 F.3d at 1340 (citation omitted). The trial court’s annunciation of a “precision” requirement there was tantamount to an incorrect gloss on the reasonable certainty requirement in our damages cases, see, e.g., Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed.Cir.2005), and was properly reversed as such. In any case it was a far cry from a specific, grounded, factual determination, as the trial court made here, demonstrating that the plaintiffs’ proposed measure of damages was not merely approximate, but actually and plainly wrong.[1]
These cases establish that business-reasonable accounting methods are good evidence of damages. But neither case establishes that when evidence of the use of a generally accepted method of accounting is present, the trial court need not consider relevant evidence of aberrant results *1375 stemming from the use of such method. Nor could they: Our precedent states that “[djamages for a breach of contract are recoverable where ... [in relevant part] the damages are shown with reasonable certainty.” Id. (emphasis added). Nothing prohibited the trial court from adjusting its damages award even though it was reasonably certain that the requested amount was wrong.
Evidence that generally accepted accounting practices were followed does not obviate examination of the underlying facts and should not nullify the trial court’s role as the weigher of evidence, the finder of facts, and the crafter of reasonable damages awards. Here, the trial court properly fulfilled that role, and nothing in the majority’s opinion suggests that the trial court’s assessment of the facts was clearly erroneous.
Because the trial court’s fact-finding as to overhead was not clearly erroneous, and because its reduction of the requested amount was not an abuse of its discretion, I would affirm the trial court’s overhead award. For these reasons, I respectfully dissent from section III of the majority opinion.

. The majority also relies upon this court’s recent reversal of the trial court in Vermont Nuclear Power Corp. v. Entergy Nuclear Vermont Yankee, 683 F.3d 1330 (Fed.Cir.2012) to support its contention that GAP and FERC-compliant accounting is per se proof of the correct measure of overhead damages. This reliance is equally misplaced. There, the trial court had refused to allow any damages for the portion of an overhead pool attributed to breach-related projects by accepted accounting practices because imprecision in the calculation of the total overhead pool made "the recovery of capital suspense loader charges dubious.” Entergy Nuclear Vt. Yankee, LLC v. United States, 95 Fed.Cl. 160, 194-95 (2010) (quotation omitted). But unlike Entergy Nuclear, the trial court here did not merely disregard accepted accounting practices as “imprecise.” Instead, it looked to the record as a whole and determined that while recovery of overhead damages was appropriate, it was necessary to adjust the requested amount in order to correct a known and specific inaccuracy.